# **Exhibit 28**

Celsius KeyFi LLC Agreement

# LIMITED LIABILITY COMPANY AGREEMENT

## OF

## CELSIUS KEYFI LLC

This Operating Agreement (this "Agreement") of Celsius KeyFi LLC, a Delaware limited liability company (the "Company"), is entered into as of October 5, 2020 by and between the Company, Jason Stone ("the "Sole Class J Member"), and Celsius US Holding LLC (the "Sole Class A Member"), the parent company and sole owner of Celsius KeyFi LLC "(Celsius").

WHEREAS, the Company was formed as a Delaware limited liability company pursuant to the filing of a Certificate of Formation on October 5, 2020 (the "Formation Date") with the Secretary of State of Delaware;

NOW, THEREFORE, in consideration of the mutual covenants contained herein and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto, intending to be legally bound, hereby agree as follows:

1.    Name. The name of the Company is Celsius KeyFi LLC.

2.    Purpose. The Company is formed for the object and purpose of, and the nature of the business to be conducted and promoted by the Company is, engaging in any lawful act or activity for which limited liability companies may be formed under the Delaware Limited Liability Company Act (the "Act").

3.    Term. The term of the Company began on the Formation Date and shall continue until the Company is dissolved by act of the Sole Class A Member or by operation of law.

4.    Principal Office Address. The address of the principal office address of the Company is 221 River Street, 9th Floor, Hoboken NJ 07030.

5.    Registered Agent. The name and address of the registered agent of the Company for service of process on the Company in the State of Delaware is The Corporation Trust Company, 1209 Orange Street, in the city of Wilmington, New Castle County, Delaware 19801.

6.    Authorized Membership Interests. The authorized membership interests of the Company that may be issued shall consist of the number of units as the Board (as defined below) may determine from time to time, which number may be increased or decreased in the sole discretion of the Board, voting majority.

7.    Classes of Membership. The Membership of the Company shall be divided into two classes:

   a. **Class A Membership Interests**, which shall bear both voting and economic rights, and shall have an exclusive right to vote two (2) Board membership positions. Class A members represent the owners of the Company.
   b. **Class J Membership Interests**, which shall bear only the voting rights provided expressly hereunder, and no economic rights, and shall have an exclusive right to vote one (1) Board membership position.

8.    Initial Membership Interests. The initial membership of the Company shall be
   a. **Class A Membership**. The name of the Sole Class A Member and its percentage ownership of the Company are set forth on Exhibit A, as amended from time to time in accordance with the terms of this Agreement.

- 1 -

    b. **Class J Membership**. The name of the Sole Class J Member and its percentage owners are set forth on <u>Exhibit A</u>, as amended from time to time in accordance with the terms of this Agreement.

9. <u>Management</u>.

    a. The business and affairs of the Company shall be managed by a board of managers (the "<u>Board</u>"). The Board shall initially consist of two (2) Class A managers and one (1) Class J manager with each manager having one vote. The Class A manager positions may be increased or decreased at the sole discretion of the Class A Membership (by majority). The Class J manager positions may be increased only with the consent of the Class A Membership (by majority) and decreased only with the consent of the Class J Membership (by majority).

    b. All actions taken by the Board shall require the affirmative vote (whether by proxy or otherwise) of the Board; however, the Class J manager will have veto rights for moving assets from Celsius KeyFi to another entity within Celsius Network Limited and its subsidiaries. The Board may appoint such officers, hire such employees and engage such other agents of the Company as it may from time to time consider appropriate. The managers comprising the Board as of the date hereof shall be as follows:

        i. **Class A Managers**: Alex Mashinsky and S. Daniel Leon.

        ii. **Class J Manager**: Jason Stone.

    c. The officers of the Company (the "<u>Officers</u>") appointed by the Board shall have the power to do any and all acts necessary or convenient to, or for the furtherance of, the purposes described herein, including all powers, statutory or otherwise, possessed by the Board under the laws of the State of Delaware and, to the extent the Board has delegated such power to officers, employees and other agents of the Company, such officers, employees and other agents shall have such power, for the avoidance of doubt, as is customary according to their title unless otherwise expressly set forth by the Board. The initial Officers shall be as follows:

        i. **Chief Executive Officer**: Jason Stone

            1. The CEO shall be terminable by the Board for any reason and by the Company for Cause. "Cause" shall be defined as non-indemnifiable conduct (as provided hereunder), to also include any dissatisfaction with the performance of the CEO as determined in good faith by the Board. If the CEO is a Class J member and simultaneously serves as the Class J Manager, and is terminated for Cause, or is unable to perform his duties due to long-term disability or death, the Class J Membership will be dissolved and all rights and responsibilities of the Class J Membership will immediately be transferred to the Class A Members. In the event of dissolving the Class J Membership, Celsius may not use its Class A Membership to make the Company to transfer, sell, encumber,, or substantially change the use of intellectual property assets from the Company for a period of five (5) years from its incorporation. Celsius may continue to use the intellectual property in accordance with the

        terms in effect immediately prior to the dissolution of the Class J Membership.

    d. Except as expressly provided herein, the Board shall govern the affairs of the Company by simple majority decision, which may be taken at a meeting or by written consent signed by the approving Board managers having the requisite votes required for the matter or question. Any official meeting of the Board shall require three (3) days' advance notice to all then-current Board members. Any action taken by written consent shall require three (3) days' advance notice to all Board managers entitled to vote on the question or action, which notice shall be deemed effective if receipt is confirmed (whether or not a vote is submitted by the recipient) or is delivered to an electronic or postal address provided by the receiving board manager for official communications hereunder. Declination to submit a vote for written consent after effective notice shall be deemed a vote of "nay."

10. <u>Protective Provisions</u>. In addition to other actions requiring unanimous Manager approval under the terms of any valid agreement or resolution of the Board as set forth from time to time, no Member or Manager has authority to do any of the following without the prior written consent of all of the Managers

   a. **Transfer Assets**. To sell, lease, exchange, mortgage, pledge, or otherwise transfer or dispose of all or substantially all of the property ,assets, or intellectual property (including new works derived from such assets) of the Company to Celsius or any of its affiliates;

   b. **Amendments**. To amend the Articles of Organization of the Company or this Agreement in any manner which would reduce the rights of the Series J Member;

   c. **Indebtedness**. To incur indebtedness by the Company other than in the ordinary course of business which could impair or encumber the intellectual property assets received in that certain purchase transaction from KeyFi, Inc., dated December 31, 2020 (the "**KeyFi IP**");

   d. **Company's Business**. To change the nature of the business of the Company; or

   e. **Bankruptcy**. To commence a voluntary bankruptcy case for the Company.

11.    <u>Allocations of Profits and Losses</u>. The Company's profits and losses shall be allocated to the Sole Class A Member as determined by the Board, subject to any agreements entered into by the Board providing for any different distribution of the Company's revenue or profits.

12.    <u>Distributions</u>. Distributions shall be made to the Sole Class A Member at the time and in the aggregate amounts determined by the Board.

13.    <u>Certificates</u>. The membership interests of the Sole Class A Member, as provided on <u>Exhibit A</u>, shall be uncertificated unless otherwise determined by the Board.

14.    <u>Assignments</u>. The Sole Class A Member may assign, sell, transfer or otherwise dispose of, in whole or in part, its limited liability company interest in the Company.

15.    <u>Limitation of Liability of Members and Board</u>. Except as otherwise provided by the Act, the debts, obligations and liabilities of the Company, whether arising in contract, tort or otherwise, shall be solely the debts, obligations and liabilities of the Company, and no member, manager or officer shall be obligated personally for any such debt, obligation or liability of the Company solely by reason of being a member, manager or officer of the Company.

16.    <u>Indemnification</u>.

a.  *General*.  The Company hereby agrees to indemnify and hold harmless any person (each an "Indemnified Person") to the fullest extent permitted under the Act, as the same now exists or may hereafter be amended, substituted or replaced (but, in the case of any such amendment, substitution or replacement only to the extent that such amendment, substitution or replacement permits the Company to provide broader indemnification rights than the Company is providing immediately prior to such amendment, substitution or replacement), against all expenses, liabilities and losses (including attorney fees and expenses, judgments, fines, excise taxes or penalties) reasonably incurred or suffered by such person (or one or more of such person's affiliates) by reason of the fact that such person is or was an officer, member or is or was serving as an officer, manager, director, principal, member, employee, agent or representative of the Company or is or was serving at the request of the Company as a managing member, manager, officer, director, principal, member, employee, agent or representative of another corporation, partnership, joint venture, limited liability company, trust or other enterprise; provided that, unless the Board otherwise consents in writing, no Indemnified Person shall be indemnified for any expenses, liabilities and losses suffered that are attributable to actions or omissions by an Indemnified Person's (or its affiliates' (excluding, for purposes hereof, the Company's and its subsidiaries')) breach of the implied covenant of good faith and fair dealing, fiduciary duty not disclaimed herein, gross negligence, willful misconduct, fraud, knowing violation of law, in each case, as determined by a final judgment, order or decree or an arbitrator or a court of competent jurisdiction (which is not appealable or with respect to which the time for appeal therefrom has expired and no appeal has been perfected) or for any present or future breaches of any representations, warranties or covenants by such Indemnified Persons or its affiliates' (excluding, for purposes hereof, the Company's and its subsidiaries'), employees, agents or representatives contained herein or in any other agreement with the Company; provided further that, unless the Board otherwise determines, no person shall be entitled to indemnification hereunder with respect to a proceeding initiated by such person. Expenses, including attorneys' fees and expenses, incurred by any such Indemnified Person in defending a proceeding (but not a proceeding initiated by such Indemnified Person, other than a proceeding to enforce such Indemnified Person's rights under this Section 15, shall be paid by the Company in advance of the final disposition of such proceeding, including any appeal therefrom, upon receipt of an undertaking by or on behalf of such Indemnified Person (in form and substance acceptable to the Board) to repay such amount if it shall ultimately be determined that such Indemnified Person is not entitled to be indemnified by the Company.

b.  *Nonexclusivity of Rights*.  The right to indemnification and the advancement of expenses conferred in this Section 15 shall not be exclusive of any other rights which any person may have or hereinafter acquire under any statute, agreement, law, vote of the Board or otherwise. The Board may grant any rights comparable to those set forth in this Section 15 to any employee, agent, or representative of the Company or such other Persons as it may determine.

c.  *Limitation*.  Notwithstanding anything contained herein to the contrary (including in this Section 15), any indemnity by the Company relating to the matters covered in this Section 15 shall be provided out of and to the extent of Company assets only, and no member (unless such member otherwise agrees in writing or is found in a final decision by a court of competent jurisdiction to have personal liability on account thereof) shall have personal liability on account thereof or shall be required to make additional capital contributions to help satisfy such indemnity of the Company.

17. <u>Fiduciary Duties</u>. Each Member, Manager and Officer (each, a "Participant") owes the fiduciary duty of care to the Company and the other Participants, and must discharge these duties and exercise the Participant's rights in the Company consistently with the obligation of good faith and fair dealing. All other fiduciary duties, including the duty of loyalty, are hereby disclaimed, except as expressly provided hereunder. Participants must discharge their fiduciary duty of care to the Company and the other Participants in accordance with the following standards:

- 4 -

    a.  <u>Standard of Care</u>. In conducting or winding up the Company's business, a Participant must refrain from engaging in intentional misconduct and knowing violations of the law. For the avoidance of doubt, notwithstanding the foregoing express forms of misconduct, a Participant shall meet this standard if the Participant's conduct is permissible under the business judgment rule as construed in the state of Delaware;

    b.  <u>Accounting</u>. A Participant must account to the Company, and hold as trustee for the Company, any profit or benefit derived by the Participant in the conduct or winding up of the Company's business or derived from use by the Participant of the Company's property;

    c.  <u>Conflict of Interests</u>. Except as otherwise expressly provided, a Participant must refrain from dealing with the Company in the conduct of or winding up of its business either personally or on behalf of a party having an adverse interest to the Company; and

    d.  <u>Noncompetition</u>. The Company's officers or any employees of the Companymay not directly compete with the Company in the conduct of its business prior to the time the Company is dissolved. Notwithstanding the foregoing, (i) investing in, or soliciting investment for or in the cryptocurrency sector generally-speaking shall not be deemed direct competition, and (ii) there shall be no affirmative duty with respect to corporate opportunity.

    e.  <u>Self-Interest</u>. A Participant does not violate any duty or obligation to the Company merely as a result of engaging in conduct that furthers the interest of the Participant. A Participant may lend money or transact other business with the Company, and, in such instance, the rights and obligations of the Participant will be the same as those of a person who is not a Participant, so long as the loan or other transaction has been approved or ratified by all applicable Participants. Unless otherwise provided by applicable law, a Participant with a financial interest in the outcome of a particular action is nevertheless entitled to vote on such action.

    f.  <u>Reliance</u>. A Participant shall not violate any of its fiduciary duties or otherwise be liable for any conduct, except for expressly-prohibited conduct under subsection (a) hereof, if that Participant acted in reliance upon information provided by the Company, including any information provided by another Participant in such other Participant's official capacity with the Company (as adjudged by a reasonably-objective independent standard).

18.    <u>Transfers</u>. Transfers of Class J Membership Interests shall not be permitted without the unanimous consent of the Class J Membership. The Class A Membership Interests may not be transferred without unanimous Board approval. Putative transfers in violation of this section shall be void *ab initio*. Notwithstanding the foregoing, this section shall not limit transfers of the Class J Membership Interests to a legal guardian or trustee in the case of death or disability of the Class J Member.

19.    <u>Amendment</u>. This Agreement may be amended or modified only by a writing that makes reference to this Agreement and is signed by the Board.

20.    <u>Governing Law</u>. This Agreement shall be governed by, and construed under, the laws of the State of Delaware, all rights and remedies being governed by said laws.

21.    <u>Bankruptcy of a Member</u>. Any member of the Company, or any assignee who becomes a member of the Company, shall not cease to be a member of the Company upon the occurrence of any of the events set forth in the Act with respect to such member of the Company and shall continue to be a member of the Company until such time as such member's Units are effectively assigned or transferred.

22.    <u>Entire Agreement</u>. This Agreement, including the exhibits hereto, constitutes the entire agreement among the parties hereto with respect to the matters provided for herein, and supersedes all prior oral or written agreements, commitments or understandings with respect to the matters provided for herein (including the Prior Agreement).

IN WITNESS WHEREOF, the undersigned, intending to be legally bound hereby, has duly executed this Agreement as of the date first set forth above.

**COMPANY:**

**Celsius KeyFi LLC**,
a Delaware limited liability company

By: *Alex Mashinsky* (DocuSigned by: 2ADC7A9BFB844C0...)
Name: Alex Mashinsky
Title: Manager

**SOLE CLASS A MEMBER:**

**Celsius US Holding LLC**,
a Delaware limited liability company

By: *Alex Mashinsky* (DocuSigned by: 2ADC7A9BFB844C0...)
Name: Alex Mashinsky
Title: Manager

**SOLE CLASS J MEMBER:**

By: (DocuSigned by: 4E475B730140488...)
Name: Jason Stone

*[Signature Page to Limited Liability Company Agreement of Celsius KeyFi LLC]*

## Exhibit A

### Membership Schedule

#### Class A

| Member | Units | Class A Percent Ownership |
|---|---|---|
| Celsius US Holding LLC | 100 | 100% |

#### Class J

| Member | Units | Class J Percent Ownership |
|---|---|---|
| Jason Stone | 100 | 100% |



| **Certificate Of Completion** | | |
|---|---|---|
| Envelope Id: 973FBC819A9043A887DD650BC6C7A68D | | Status: Completed |
| Subject: Please DocuSign: 20210105- Celsius-KeyFi-LLC Operating Agreement.pdf | | |
| Source Envelope: | | |
| Document Pages: 7 | Signatures: 3 | Envelope Originator: |
| Certificate Pages: 5 | Initials: 0 | Jeremie Beaudry |
| AutoNav: Enabled | | 221 River Street |
| EnvelopeId Stamping: Enabled | | 9th Floor |
| Time Zone: (UTC-08:00) Pacific Time (US & Canada) | | Hoboken, NJ  07030 |
| | | jeremie@celsius.network |
| | | IP Address: 76.20.231.103 |

| **Record Tracking** | | |
|---|---|---|
| Status: Original<br>         1/11/2021 7:54:04 PM | Holder: Jeremie Beaudry<br>             jeremie@celsius.network | Location: DocuSign |

| **Signer Events** | **Signature** | **Timestamp** |
|---|---|---|
| Alex Mashinsky<br>alex@celsius.network<br>Ceo<br>Celsius Network Inc.<br>Security Level: Email, Account Authentication (None) | *Alex Mashinsky*<br>─2ADC7A9BFB844C0...<br><br>Signature Adoption: Pre-selected Style<br>Using IP Address: 24.90.80.112<br>Signed using mobile | Sent: 1/11/2021 7:55:48 PM<br>Viewed: 1/11/2021 8:13:38 PM<br>Signed: 1/11/2021 8:13:51 PM |
| **Electronic Record and Signature Disclosure:**<br>     Accepted: 10/2/2019 8:57:30 AM<br>     ID: 067e9a34-c679-47d1-a866-710f5317a621 | | |
| Jason Stone<br>jason.stone@celsius.network<br>CEO<br>Security Level: Email, Account Authentication (None) | [signature]<br>─4E475B730140488...<br><br>Signature Adoption: Drawn on Device<br>Using IP Address: 209.91.232.75<br>Signed using mobile | Sent: 1/11/2021 7:55:48 PM<br>Viewed: 1/12/2021 6:38:29 PM<br>Signed: 1/12/2021 6:38:45 PM |
| **Electronic Record and Signature Disclosure:**<br>     Accepted: 1/12/2021 6:38:29 PM<br>     ID: 4c926cfa-d75d-493a-aa00-43e08b9ecdb5 | | |

| **In Person Signer Events** | **Signature** | **Timestamp** |
|---|---|---|

| **Editor Delivery Events** | **Status** | **Timestamp** |
|---|---|---|

| **Agent Delivery Events** | **Status** | **Timestamp** |
|---|---|---|

| **Intermediary Delivery Events** | **Status** | **Timestamp** |
|---|---|---|

| **Certified Delivery Events** | **Status** | **Timestamp** |
|---|---|---|

| **Carbon Copy Events** | **Status** | **Timestamp** |
|---|---|---|
| Roni Pavon<br>roni@celsius.network<br>Security Level: Email, Account Authentication (None) | COPIED | Sent: 1/11/2021 7:55:49 PM |
| **Electronic Record and Signature Disclosure:**<br>     Accepted: 11/25/2020 6:45:36 AM<br>     ID: 7ba2290b-701d-4e7e-b700-77dd6baf57cb | | |

| Witness Events | Signature | Timestamp |
|---|---|---|

| Notary Events | Signature | Timestamp |
|---|---|---|

| Envelope Summary Events | Status | Timestamps |
|---|---|---|
| Envelope Sent | Hashed/Encrypted | 1/11/2021 7:55:49 PM |
| Certified Delivered | Security Checked | 1/12/2021 6:38:29 PM |
| Signing Complete | Security Checked | 1/12/2021 6:38:45 PM |
| Completed | Security Checked | 1/12/2021 6:38:45 PM |

| Payment Events | Status | Timestamps |
|---|---|---|

**Electronic Record and Signature Disclosure**

Electronic Record and Signature Disclosure created on: 9/10/2019 7:41:24 AM
Parties agreed to: Alex Mashinsky, Jason Stone, Roni Pavon

22-01139-mg    Doc 24-2    Filed 11/15/22    Entered 11/15/22 00:01:30    Exhibit 28
Pg 11 of 13

**ELECTRONIC RECORD AND SIGNATURE DISCLOSURE**

From time to time, Celsius Network Inc. (we, us or Company) may be required by law to provide to you certain written notices or disclosures. Described below are the terms and conditions for providing to you such notices and disclosures electronically through the DocuSign system. Please read the information below carefully and thoroughly, and if you can access this information electronically to your satisfaction and agree to this Electronic Record and Signature Disclosure (ERSD), please confirm your agreement by selecting the check-box next to 'I agree to use electronic records and signatures' before clicking 'CONTINUE' within the DocuSign system.

**Getting paper copies**

At any time, you may request from us a paper copy of any record provided or made available electronically to you by us. You will have the ability to download and print documents we send to you through the DocuSign system during and immediately after the signing session and, if you elect to create a DocuSign account, you may access the documents for a limited period of time (usually 30 days) after such documents are first sent to you. After such time, if you wish for us to send you paper copies of any such documents from our office to you, you will be charged a $0.00 per-page fee. You may request delivery of such paper copies from us by following the procedure described below.

**Withdrawing your consent**

If you decide to receive notices and disclosures from us electronically, you may at any time change your mind and tell us that thereafter you want to receive required notices and disclosures only in paper format. How you must inform us of your decision to receive future notices and disclosure in paper format and withdraw your consent to receive notices and disclosures electronically is described below.

**Consequences of changing your mind**

If you elect to receive required notices and disclosures only in paper format, it will slow the speed at which we can complete certain steps in transactions with you and delivering services to you because we will need first to send the required notices or disclosures to you in paper format, and then wait until we receive back from you your acknowledgment of your receipt of such paper notices or disclosures. Further, you will no longer be able to use the DocuSign system to receive required notices and consents electronically from us or to sign electronically documents from us.

**All notices and disclosures will be sent to you electronically**

Unless you tell us otherwise in accordance with the procedures described herein, we will provide electronically to you through the DocuSign system all required notices, disclosures, authorizations, acknowledgements, and other documents that are required to be provided or made available to you during the course of our relationship with you. To reduce the chance of you inadvertently not receiving any notice or disclosure, we prefer to provide all of the required notices and disclosures to you by the same method and to the same address that you have given us. Thus, you can receive all the disclosures and notices electronically or in paper format through the paper mail delivery system. If you do not agree with this process, please let us know as described below. Please also see the paragraph immediately above that describes the consequences of your electing not to receive delivery of the notices and disclosures electronically from us.

**How to contact Celsius Network Inc.:**

You may contact us to let us know of your changes as to how we may contact you electronically, to request paper copies of certain information from us, and to withdraw your prior consent to receive notices and disclosures electronically as follows:
To contact us by email send messages to: ashley@celsius.network

**To advise Celsius Network Inc. of your new email address**

To let us know of a change in your email address where we should send notices and disclosures electronically to you, you must send an email message to us at ashley@celsius.network and in the body of such request you must state: your previous email address, your new email address.  We do not require any other information from you to change your email address.

If you created a DocuSign account, you may update it with your new email address through your account preferences.

**To request paper copies from Celsius Network Inc.**

To request delivery from us of paper copies of the notices and disclosures previously provided by us to you electronically, you must send us an email to ashley@celsius.network and in the body of such request you must state your email address, full name, mailing address, and telephone number. We will bill you for any fees at that time, if any.

**To withdraw your consent with Celsius Network Inc.**

To inform us that you no longer wish to receive future notices and disclosures in electronic format you may:

i. decline to sign a document from within your signing session, and on the subsequent page, select the check-box indicating you wish to withdraw your consent, or you may;

ii. send us an email to ashley@celsius.network and in the body of such request you must state your email, full name, mailing address, and telephone number. We do not need any other information from you to withdraw consent..  The consequences of your withdrawing consent for online documents will be that transactions may take a longer time to process..

**Required hardware and software**

The minimum system requirements for using the DocuSign system may change over time. The current system requirements are found here: https://support.docusign.com/guides/signer-guide-signing-system-requirements.

**Acknowledging your access and consent to receive and sign documents electronically**

To confirm to us that you can access this information electronically, which will be similar to other electronic notices and disclosures that we will provide to you, please confirm that you have read this ERSD, and (i) that you are able to print on paper or electronically save this ERSD for your future reference and access; or (ii) that you are able to email this ERSD to an email address where you will be able to print on paper or save it for your future reference and access. Further, if you consent to receiving notices and disclosures exclusively in electronic format as described herein, then select the check-box next to 'I agree to use electronic records and signatures' before clicking 'CONTINUE' within the DocuSign system.

By selecting the check-box next to 'I agree to use electronic records and signatures', you confirm that:

- You can access and read this Electronic Record and Signature Disclosure; and
- You can print on paper this Electronic Record and Signature Disclosure, or save or send this Electronic Record and Disclosure to a location where you can print it, for future reference and access; and
- Until or unless you notify Celsius Network Inc. as described above, you consent to receive exclusively through electronic means all notices, disclosures, authorizations, acknowledgements, and other documents that are required to be provided or made available to you by Celsius Network Inc. during the course of your relationship with Celsius Network Inc..