## **Exhibit 31**

December 31, 2020 Service Agreement

## Service Agreement

This Service Agreement (the "**Agreement**"), dated December 31, 2020 ("**Effective Date**"), states the terms and conditions that govern the contractual agreement between **CELSIUS KEYFI LLC**, organized and existing under the laws of the State of Delaware, with its principal place of business at 221 River Street Suite 9129, Hoboken, New Jersey 07030 ("**KEYFI**") and **CELSIUS NETWORK LIMITED**, a private company incorporated under the laws of England and Wales, with its principal place of business at 1 Bartholomew Lane, London, England, EC2N 2AX ("**Celsius**"). Each of KEYFI and Celsius shall be referred to herein as a "**Party**", and together, the "**Parties**".

**WHEREAS,** KEYFI offers financial services in the field of cryptocurrency; and

**WHEREAS,** Celsius desires to retain the services of KEYFI to render certain financial services according to the terms and conditions herein; and

**NOW, THEREFORE,** In consideration of the mutual covenants and promises made by the parties hereto, the parties covenant and agree as follows:

**1.     Interpretation & Definitions**

(a)   The preamble to this Agreement constitutes an integral part hereof. The headings of the sections and subsections of this Agreement are for convenience of reference only and are not to be considered in interpreting this Agreement.

(b)   In this Agreement, unless the context otherwise requires, "Intellectual Property" means all patents, registered copyrights, and trademarks, and, without limitation, any and all inventions, improvements, designs, ideas, concepts, innovations, original works of authorship, formulas, concepts, techniques, know how, methods, systems, processes, compositions of matter, computer software programs, databases, mask works, and trade secrets; each of the foregoing works, in which rights may subsist, whether or not patentable, copyrightable or protectable as trade secrets, irrespective of whether such has been registered in a patent, copyright, trademark or other form, and irrespective of whether it constitutes a commercial or professional secret.

**2.     Term & Termination**

This Agreement is effective and shall commence as of the date first above-written and shall continue to be in effect until terminated by either Party by providing the other Party with a thirty (30) days prior written notice.

**3.     Services**

KEYFI shall provide certain services to Celsius, including the deployment of coins, as is further provided in **Schedule A** (the "**Services**"). The relationship of the parties with respect to the provision of the Services shall further be governed by any express stipulations provided in **Schedule A**. With respect to such Services, all coins deployed by KEYFI and revenues generated and/or received from third parties shall be owned by and paid to Celsius or an Affiliate of Celsius (as determined by Celsius), excluding KEYFI. "**Affiliate**" means any direct or indirect subsidiary of Celsius and any other entity directly or indirectly controlling, controlled by, or under common control with Celsius.

**4.     Compensation**

As a sole and exclusive compensation for the Services, Celsius shall pay KEYFI the consideration set forth in **Schedule B** attached hereto.

**5.     Intellectual Property Rights**

(a) The Parties acknowledge and agree that KEYFI will hold all new intellectual property, unless agreed upon in writing by both parties, rights in any work product resulting from the Services including, but not limited to, strategies, copyright and trademark rights (the "**Resulting Works**"). Celsius agrees not to claim any intellectual property ownership in the Resulting Works at any time prior to or after the completion and delivery of the Resulting Works to Celsius, except to the extent the Resulting Works are or contain the Original IP, other pre-existing IP of Celsius.

**6.     Independent Contractor**

The parties hereto understand and agree that KEYFI shall perform Services for Celsius pursuant to this Agreement as an independent contractor. Nothing in this Agreement shall be construed to create the relationship of employer and employee or of general agency between the parties. The parties hereto further acknowledge and agree that this Agreement does not create a partnership or joint venture between the Parties, and is exclusively a contract for service.

**7.     Confidentiality**

The Parties acknowledge that, from time to time, Celsius may disclose to KEYFI either directly or indirectly in writing, orally or by inspection of tangible objects information which is proprietary or confidential or which would, under the circumstances, be understood by a reasonable person to be proprietary and nonpublic, including without limitation, the terms of this Agreement, non-public information and all unpublished marketing manuals, service manuals, information, data, reports and other similar materials or records provided by Celsius and/or its Affiliates to KEYFI pursuant to this Agreement or otherwise, as well as all work products of the Services and related notes, files, and documents ("**Confidential Information**"). KEYFI shall use such Confidential Information solely for fulfilling its responsibilities and obligations under this Agreement and for no other purpose. KEYFI shall retain such Confidential Information in confidence and shall not disclose it to any third party without Celsius' prior written consent. KEYFI shall use at least the same procedures and degree of care which it uses to protect its own Confidential Information of like importance, and in no event less than reasonable care, and shall be responsible and liable for any use or disclosure of the Confidential Information by its employees, agents or subcontractors in violation of this Agreement. KEYFI shall immediately notify Celsius of any unauthorized use or disclosure, or suspected unauthorized use or disclosure, of the Confidential Information.

7.1     Exceptions. The obligations set forth in this Section 7 shall not apply to information that KEYFI is able to demonstrate, though clear and convincing evidence:

(a)     was generally available to the public at the time of its disclosure to KEYFI hereunder;

(b)     became generally available to the public after its disclosure other than through an act or omission of KEYFI in breach of this Agreement; or

(c)     was subsequently, lawfully and independently disclosed to KEYFI by a person other than Celsius, not in violation of the confidentiality agreement, arrangement or understanding with such person.

7.2     Required Disclosures. In the event that any disclosure of the Confidential Information by KEYFI is required pursuant to applicable law, KEYFI shall provide Celsius reasonable notice and opportunity to contest the need for such disclosure, or to seek a protective order therefor. If Celsius fails to obtain a protective order, KEYFI will disclose only that portion of the Confidential Information that is legally so required to be disclosed, provided that any Confidential Information so disclosed shall maintain its confidentiality protection for all purposes other than such legally required disclosure.

8. **Indemnification**

KEYFI will defend, indemnify, and hold Celsius, its Affiliates, and their respective directors, officers, and employees (collectively, the "**Celsius Indemnified Parties**") harmless from and against, and reimburse Celsius Indemnified Parties with respect to any and all claims, losses, liabilities, damages, injuries, royalties, awards, judgments, settlements, demands, fines, deficiencies, penalties, taxes, interest, fees, costs, and expenses, including reasonable costs of investigation and defense and fees and expenses of counsel, experts and other professionals (collectively, "**Losses**") paid, incurred, suffered or sustained by any Celsius Indemnified Party, directly or indirectly, whether or not due to a claim by a third party, in each case, arising out of, resulting from, relating to or in connection with:

(a) any breach of any covenant or agreement required to be performed by or on behalf of KEYFI under this Agreement or any other agreement contemplated herein to which KEYFI is a party;

(b) any claims or threatened claims by or purportedly on behalf of any current or former security holder of KEYFI or rights or purported rights to acquire KEYFI's securities or other equity interests in the KEYFI (or the economic value thereof), or in connection with the transactions contemplated herein; or

(c) fraud, intentional misrepresentation, or willful breach by the KEYFI, any of its affiliates, or any of their respective representatives (whether or not acting in their capacity as such).

9. Notices

All effective notices hereunder shall be in writing and deemed given and received when delivered in person, by email, facsimile, or by commercial air courier service. Notices shall be addressed to each party at its address set forth herein, or such other address as the recipient may have specified by earlier notice to the sender. Any notice shall be effective and be deemed to have been served, if personally delivered or sent by email or facsimile, on the next business day, and if by courier, on the second business day thereafter.

10. Assignment

This Agreement shall not be assigned by operation of law or otherwise, provided that Celsius may assign any of its rights or obligations herein to any of its Affiliates with reasonable advance written notice to KEYFI.

11. **Waiver & Modification**

No waiver or modification of this Agreement shall be valid unless in writing and agreed upon by both Parties. Any consent by any party to, or waiver of, a breach or condition of this Agreement by the other, whether express or implied, shall not constitute consent to, waiver of, or excuse for any other different or subsequent breach or suspension or variation from any condition or obligation hereof.

12. **Entire Agreement**

This Agreement, along with its exhibits, schedules, annexes, and all other agreements referenced (which are hereby incorporated by reference), is executed and delivered with the understanding that it embodies the entire Agreement between the Parties and that there are no prior representations, warranties, or agreements relating to the subject matter of this Agreement.

13. **Applicable Law**

This Agreement shall be governed by, and construed in accordance with, the laws England and Wales, excluding that body of law pertaining to conflict of law, regardless of the laws that might otherwise govern under applicable principles of conflicts of law, and the Parties do hereby consent and submit to the exclusive jurisdiction of the competent courts in London, England, with respect to any dispute or controversy arising out of, or in connection with, this Agreement.

**IN WITNESS WHEREOF,** each of the Parties has executed this Agreement, both Parties by its respective duly authorized officer, as of the date and year first above written.

**Celsius Network Limited**

Signature: *Alex Mashinsky* (DocuSigned by: 27DC7A9RFB844C0...)
Printed Name: Alex Mashinsky
Title: Ceo
Email for notices: alex@celsius.network

**Celsius KeyFi LLC**

Signature: (DocuSigned by: 4E475B730140488...)
Printed Name: Jason Stone
Title: CEO
Email for notices: jason.stone@celsius.network

DocuSign Envelope ID: 67365D98-D950-46D6-871A-9E5E726972DD

<u>Schedule A</u>

**I. Material Service & Relationship Terms**.

- Celsius shall perform coin staking exclusively through KEYFI for the duration of and pursuant to the terms of this Agreement, unless Celsius has a more profitable strategy (based on gross revenue) to coin staking, either independently or through a third party. Celsius will notify KEYFI and the exclusivity provision will be waived.
- Celsius and KEYFI accounting shall remain separate and administered independently by the respective parties, unless for the purpose of auditing or valuing the entire Celsius group or for taxation, reporting or any other request or compliance requirement derived from applicable regulation.
- KEYFI shall retain control of its internal budget and profit & loss determination in good faith, notwithstanding,
  - o  KEYFI shall obtain Celsius approval for any expenditures exceeding $50,000 individually, or in aggregate in a calendar year if a recurring expenditure, once KEYFI costs exceed $2 million in a calendar year (exclusive of employee costs), and
  - o  Celsius shall pay (including by way of advancement or reimbursement, as applicable) any reasonable costs reasonably-necessitated in delivering the Services as and when requested by KEYFI. For the avoidance of doubt, all such costs will be considered as cost deducted from gross revenues under section II below.
- KEYFI shall provide financials to Celsius on a weekly basis on a date chosen by the Celsius' CFO. Additionally, financials must be provided within 24 business hours if requested by the Celsius' CFO, CEO and/or CIO.
- Celsius has the right to verify, audit and confirm all accounting and financial records, books,statements prepared by KEYFI or any other information requested by it, at its sole discretion.. KEYFI will act in good faith to prepare and provide these documents in a timely manner.
- KEYFI shall meet with Celsius' CIO,Risk Officer and/or CEO on a periodic basis to review KEYFI assets and performance and disclose and approve all strategies and related issues applied to the deployment of all coins.

## II. Service Agreement Key Terms

1.  In this Schedule:

    1.2  "**APY**" means the annualized rate of return for coins earned from deploying coins on a platform or rewards paid for deposits;

    1.3  "**Authorized Decentralized Finance Activities**" means any deployed coins, such as BTC, ETH, stable coins, and other assets are deployed to authorized activities which earn coins from lending, borrowing, high-frequency liquidity provisions, and other authorized DeFi activities;

    1.4  "**Insurance Policy Cost**" means the lowest of up to 1% of total AUM deployed by the Buyer, or the actual cost of such policy purchased by Celsius.

    1.5  "**Net Profit**" means the Net Profits as calculated in accordance with Section 9 below (as applicable);"**Profit Sharing Percentage for activity**" means a profit share for coins attributed to each activity as described herein;

    1.6  "**Reserve Rate**" means the percentage of holdings in a coin that are reserved by Parent or its Affiliates (excluding the Buyer) ("**Celsius**") for withdrawals. The reserve rate used for each coin will be determined on a weekly basis as displayed through Celsius' Instilend platform;

    1.7  "**Rewards APY**" means the annualized rate of rewards paid to depositors of coins as a percentage of their deposited coins;

    1.8  "**Payout Date**" has the meaning given to that term herein;

    1.9  "**Staking Coins**" means a type of mining through which new coins are earned through maintaining deposits of coins on a platform;

    1.10 "**Staking Plus Coins**" means Staking Coins with respect to which the staking activity generates earnings of multiple types of coins;

    1.11 "**Start Date**" means August 17, 2020.

2.  The Buyer shall provide certain services to the Parent, including the deployment of coins (the "**Services**"). With respect to such Services, all revenues received from third parties shall be paid to the Parent or an Affiliate.

3.  With respect to **Staking Coins and Staking Plus Coins**, the Net Profits (as described in section 10), as calculated in accordance with the Trading Activities and Performance Calculations set forth below, with no double counting, shall be allocated as follows:

    3.1  From the Start Date until the end of 2022: (i) fifty percent (50%) of the Net Profits will be allocated to the Buyer, ; and (ii) from the portion payable to the Buyer, 20% shall be paid to the Seller as consideration for the Services, and (iii) the balance of the Net Profits will be allocated to and retained by the Parent.

3.2  From the beginning of 2023 and continuing into perpetuity, the allocation shall be (i) fifty percent (20%) of the Net Profits will be allocated to the Buyer, and (iii) the balance of the Net Profits will be allocated to and retained by the Parent.

4. With respect to **Authorized Decentralized Finance Activities**, on and from the Start Date and thereafter until the end of 2022, of the Net Profits (as described in section 10), calculated in accordance with the Trading activities and Performance Calculations set forth below, with no double counting: (a) twenty percent (20%) shall be attributed to the Buyer, and (b) of the Buyer's portion, 20% shall be further attributed and payable to the Seller, and (c) eighty percent (80%) shall be allocated to and retained by the Parent.

    a. From the beginning of 2023 and continuing into perpetuity, the allocation shall remain as above with the modification that the portion attributed and payable to Seller shall revert to Buyer.

5. For the avoidance of doubt, unless explicitly agreed in writing by Parent, the Buyer shall not be entitled to any other compensation other than the compensation explicitly set forth herein, including, without limitation, for any other services performed by the Buyer or any of its employees or service providers for the benefit of Celsius.

6. Trading activities and Performance Calculations

    6.1 The following are approved activities and methods of calculating performance fees under this agreement. Additional activities and/or changes to methods of calculating performance fees need to be submitted to and approved by the Chief Financial Officer and the Financial Risk Officer of the Parent.

    6.2 Net Profits for each coin across all activities will be computed each week from Friday to Friday, and a running total of such Gross Profits for each coin across all activities will be recorded in the number of tokens and in USD value.

    6.3 Payouts of Net Profits will be made only for positive accumulated Net Profits across all coin types and activities at Payout Dates. For clarity, payouts are not made for individual performance of specific coins within particular activities but are based on performance across all coins and activities.

    6.4 Payouts will be made within 15 days of each Payout Date. The first payout date will be 12/31/2020, and subsequent ones will be on the 15th of each month (or the first business day thereafter, if occurring on a weekend or national holiday) immediately following the month in which activities attributable to the Payouts occur. Payouts may be made in USD, or at the election of the payee, in tokens earned, up to 50% the amount of Net Profits for each token type. The token Gross Profits in USD shall be calculated per Subsection (e) hereof. Payouts of specific tokens cannot exceed the net profits generated in that token. Payouts are subject to a high water mark, such that any losses incurred are reflected as expenses in the running totals of Net Profits and will impact subsequent payouts.

    6.5 Where called for, 7-day and monthly weighted averages are used for each weekly and monthly performance calculation, respectively, for both token prices in USD (or other applicable base currency, as mutually-agreed) as well as for all APYs and Rates described in the agreement.

6.6    Approved activities include Staking Coins, Staking Plus Coins and Authorized Decentralized Finance Activities.

7.    Weekly and Monthly Performance Calculation for Activities

On a weekly and monthly basis, the following performance calculations will be performed for each coin that is allocated to the approved activities:

7.1    Revenues for activity in Coins

(a)    Coins Allocated to activity = Coins that the Parent makes available for an activity

(b)    Coins Deposited = Coins Allocated to activity * (1 + Reserve Rate)

(c)    Earned Coins = Coins Earned from All Sources as Rewards from Coins Allocated to activity

(d)    Note: Earned coins are recorded for each coin within each activity.

7.2    Costs for activity in Coins [are calculated separately for each token type]

(a)    Weekly or Monthly Rewards APY Rate for activity in Coin = [(Rewards APY for Coin) * (Percentage Earning Interest in Native Coin) + (Rewards APY for CEL tokens) * (Percentage of Deposits in Native Coin Earning Interest in CEL)] / Number of Periods.

Number of Periods = 52 for Weekly and 12 for Monthly Rewards

(b)    Rewards Costs = Coins Deposited * Weekly or Monthly Rewards APY for activity in Coin

(c)    Note: Weekly or Monthly Deposit APY Rate reflects that rewards to retail depositors can be paid in the coin deposited, or in CEL tokens.

7.3    Gross Profits for activity in Coins

(a)    Gross Profits Attributed to activity in Coins = (Earned Coins – Rewards Costs)

(b)    Note: This is performed for each coin within each activity.

7.4    Gross Profits for Activities in USD

(a)    Gross Profits Attributed to activity in USD = Gross Profits Attributed to activity in Coins * USD Rate for Coins in activity

(b)    Note: This is performed for each coin within each activity.

(c)    Note: If the context requires, the USD Rate will be taken as a multiday weighted average (per Section 6(e) hereof or otherwise).

7.5    Total Gross Profits for All activities in Coins

(a)    Total Gross Profit for All activities in Coins = Summation [ Gross Profits

  (b) Total Gross Profit for All activities in USD = Summation [ Gross Profits Attributed to activity in USD]

  (c) Note: Summation refers to adding Gross Profits Attributed to each activity across all coins.

8. Total Gross Profits for Sale of Software/Subscriptions

a. Profits from the sales of Software Licenses / Subscriptions to third parties (MPC software modules, accounting systems, etc), will be split equally (fifty percent to each party) as between Parent and Buyer until the end of 2022. Buyer in turn will share 20% of its share with Seller during the foregoing period.
b. From the beginning of 2023 and continuing into perpetuity, the profit share shall remain as above with the modification that the portion attributed and payable to Seller shall revert to Buyer.
c. Any development must be approved by the Parent's Chief Technology Officer ("CTO") or Chief Executive Officer ("CEO"), in writing, after it has been determined that it is needed for the activity performed by Buyer; and any such sale should be approved by the Chief Revenue Officer or CEO, based on the group's needs and activity.

9. Payout Period and Net Profits Calculations

Running totals of Total Gross Profit for All activities in Coins and Total Profit for All activities in USD will be calculated each week and month. The following calculations will be performed at the end of each payout period. With the exception of the first Payout, the Payout period shall be one month.

Total Period Gross Profit for All activities in USD = Summation [Total Gross Profit for All activities in USD]

Note: Summation refers to summing all monthly gross profits for all attributable activities across coins for the payout period.

Net Profit = Total Period Gross Profit for All activities in USD - Salaries * 2 (for initial 5 employees)[1]- Hardware/Cloud Expenses - Cumulative losses from Previous Periods - Insurance Policy Costs - Staking Costs - Transaction Fees.

10. Division of Net Profit by Activity for Payout Period

Net Profit for Staking Coins and Staking Plus Coins = Net Profit * Total Period Gross Profit for all Staking Activities in USD / Total Period Gross Profit for all activities in USD

Net Profit for Decentralized Finance Activities = Net Profit * Total Period Gross Profit for all Defi Activities in USD / Total Period Gross Profit for all activities in USD

---

[1] Note: Any additional hires will come out at 1x salary. In addition, all additional hires shall be approved by the CTO or CEO.



| **Certificate Of Completion** | | |
|---|---|---|
| Envelope Id: 67365D98D95046D6871A9C5E736972DD | | Status: Completed |
| Subject: Please DocuSign: 20200111- Celsius-KeyFi Intercompany Services Agreement.pdf | | |
| Source Envelope: | | |
| Document Pages: 9 | Signatures: 2 | Envelope Originator: |
| Certificate Pages: 5 | Initials: 0 | Jeremie Beaudry |
| AutoNav: Enabled | | 221 River Street |
| EnvelopeId Stamping: Enabled | | 9th Floor |
| Time Zone: (UTC-08:00) Pacific Time (US & Canada) | | Hoboken, NJ  07030 |
| | | jeremie@celsius.network |
| | | IP Address: 76.20.231.103 |

| **Record Tracking** | | |
|---|---|---|
| Status: Original | Holder: Jeremie Beaudry | Location: DocuSign |
| 1/11/2021 7:55:57 PM | jeremie@celsius.network | |

| **Signer Events** | **Signature** | **Timestamp** |
|---|---|---|
| Alex Mashinsky<br>alex@celsius.network<br>Ceo<br>Celsius Network Inc.<br>Security Level: Email, Account Authentication (None) | *Alex Mashinsky* (DocuSigned by)<br>—2ADC7A9BFB844C0...<br><br>Signature Adoption: Pre-selected Style<br>Using IP Address: 24.90.80.112<br>Signed using mobile | Sent: 1/11/2021 8:02:23 PM<br>Viewed: 1/11/2021 8:14:04 PM<br>Signed: 1/11/2021 8:14:12 PM |
| **Electronic Record and Signature Disclosure:**<br>    Accepted: 10/2/2019 8:57:30 AM<br>    ID: 067e9a34-c679-47d1-a866-710f5317a621 | | |
| Jason Stone<br>jason.stone@celsius.network<br>CEO<br>Security Level: Email, Account Authentication (None) | (DocuSigned by) signature<br>—4E475B730140488...<br><br>Signature Adoption: Drawn on Device<br>Using IP Address: 209.91.232.75<br>Signed using mobile | Sent: 1/11/2021 8:02:23 PM<br>Viewed: 1/12/2021 6:42:04 PM<br>Signed: 1/12/2021 6:42:13 PM |
| **Electronic Record and Signature Disclosure:**<br>    Accepted: 1/12/2021 6:42:04 PM<br>    ID: 0c65b906-0c7e-4433-8c78-ace2feb599de | | |

| **In Person Signer Events** | **Signature** | **Timestamp** |
|---|---|---|

| **Editor Delivery Events** | **Status** | **Timestamp** |
|---|---|---|

| **Agent Delivery Events** | **Status** | **Timestamp** |
|---|---|---|

| **Intermediary Delivery Events** | **Status** | **Timestamp** |
|---|---|---|

| **Certified Delivery Events** | **Status** | **Timestamp** |
|---|---|---|

| **Carbon Copy Events** | **Status** | **Timestamp** |
|---|---|---|
| Roni Pavon<br>roni@celsius.network<br>Security Level: Email, Account Authentication (None) | COPIED | Sent: 1/11/2021 8:02:23 PM |
| **Electronic Record and Signature Disclosure:**<br>    Accepted: 11/25/2020 6:45:36 AM<br>    ID: 7ba2290b-701d-4e7e-b700-77dd6baf57cb | | |

| Witness Events | Signature | Timestamp |
|---|---|---|

| Notary Events | Signature | Timestamp |
|---|---|---|

| Envelope Summary Events | Status | Timestamps |
|---|---|---|
| Envelope Sent | Hashed/Encrypted | 1/11/2021 8:02:23 PM |
| Certified Delivered | Security Checked | 1/12/2021 6:42:04 PM |
| Signing Complete | Security Checked | 1/12/2021 6:42:13 PM |
| Completed | Security Checked | 1/12/2021 6:42:13 PM |

| Payment Events | Status | Timestamps |
|---|---|---|

**Electronic Record and Signature Disclosure**

Electronic Record and Signature Disclosure created on: 9/10/2019 7:41:24 AM
Parties agreed to: Alex Mashinsky, Jason Stone, Roni Pavon

**ELECTRONIC RECORD AND SIGNATURE DISCLOSURE**

From time to time, Celsius Network Inc. (we, us or Company) may be required by law to provide to you certain written notices or disclosures. Described below are the terms and conditions for providing to you such notices and disclosures electronically through the DocuSign system. Please read the information below carefully and thoroughly, and if you can access this information electronically to your satisfaction and agree to this Electronic Record and Signature Disclosure (ERSD), please confirm your agreement by selecting the check-box next to 'I agree to use electronic records and signatures' before clicking 'CONTINUE' within the DocuSign system.

**Getting paper copies**

At any time, you may request from us a paper copy of any record provided or made available electronically to you by us. You will have the ability to download and print documents we send to you through the DocuSign system during and immediately after the signing session and, if you elect to create a DocuSign account, you may access the documents for a limited period of time (usually 30 days) after such documents are first sent to you. After such time, if you wish for us to send you paper copies of any such documents from our office to you, you will be charged a $0.00 per-page fee. You may request delivery of such paper copies from us by following the procedure described below.

**Withdrawing your consent**

If you decide to receive notices and disclosures from us electronically, you may at any time change your mind and tell us that thereafter you want to receive required notices and disclosures only in paper format. How you must inform us of your decision to receive future notices and disclosure in paper format and withdraw your consent to receive notices and disclosures electronically is described below.

**Consequences of changing your mind**

If you elect to receive required notices and disclosures only in paper format, it will slow the speed at which we can complete certain steps in transactions with you and delivering services to you because we will need first to send the required notices or disclosures to you in paper format, and then wait until we receive back from you your acknowledgment of your receipt of such paper notices or disclosures. Further, you will no longer be able to use the DocuSign system to receive required notices and consents electronically from us or to sign electronically documents from us.

**All notices and disclosures will be sent to you electronically**

Unless you tell us otherwise in accordance with the procedures described herein, we will provide electronically to you through the DocuSign system all required notices, disclosures, authorizations, acknowledgements, and other documents that are required to be provided or made available to you during the course of our relationship with you. To reduce the chance of you inadvertently not receiving any notice or disclosure, we prefer to provide all of the required notices and disclosures to you by the same method and to the same address that you have given us. Thus, you can receive all the disclosures and notices electronically or in paper format through the paper mail delivery system. If you do not agree with this process, please let us know as described below. Please also see the paragraph immediately above that describes the consequences of your electing not to receive delivery of the notices and disclosures electronically from us.

**How to contact Celsius Network Inc.:**

You may contact us to let us know of your changes as to how we may contact you electronically, to request paper copies of certain information from us, and to withdraw your prior consent to receive notices and disclosures electronically as follows:
To contact us by email send messages to: ashley@celsius.network

**To advise Celsius Network Inc. of your new email address**

To let us know of a change in your email address where we should send notices and disclosures electronically to you, you must send an email message to us at ashley@celsius.network and in the body of such request you must state: your previous email address, your new email address.  We do not require any other information from you to change your email address.

If you created a DocuSign account, you may update it with your new email address through your account preferences.

**To request paper copies from Celsius Network Inc.**

To request delivery from us of paper copies of the notices and disclosures previously provided by us to you electronically, you must send us an email to ashley@celsius.network and in the body of such request you must state your email address, full name, mailing address, and telephone number. We will bill you for any fees at that time, if any.

**To withdraw your consent with Celsius Network Inc.**

To inform us that you no longer wish to receive future notices and disclosures in electronic format you may:

i. decline to sign a document from within your signing session, and on the subsequent page, select the check-box indicating you wish to withdraw your consent, or you may;

ii. send us an email to ashley@celsius.network and in the body of such request you must state your email, full name, mailing address, and telephone number. We do not need any other information from you to withdraw consent..  The consequences of your withdrawing consent for online documents will be that transactions may take a longer time to process..

**Required hardware and software**

The minimum system requirements for using the DocuSign system may change over time. The current system requirements are found here: https://support.docusign.com/guides/signer-guide-signing-system-requirements.

**Acknowledging your access and consent to receive and sign documents electronically**

To confirm to us that you can access this information electronically, which will be similar to other electronic notices and disclosures that we will provide to you, please confirm that you have read this ERSD, and (i) that you are able to print on paper or electronically save this ERSD for your future reference and access; or (ii) that you are able to email this ERSD to an email address where you will be able to print on paper or save it for your future reference and access. Further, if you consent to receiving notices and disclosures exclusively in electronic format as described herein, then select the check-box next to 'I agree to use electronic records and signatures' before clicking 'CONTINUE' within the DocuSign system.

By selecting the check-box next to 'I agree to use electronic records and signatures', you confirm that:

- You can access and read this Electronic Record and Signature Disclosure; and
- You can print on paper this Electronic Record and Signature Disclosure, or save or send this Electronic Record and Disclosure to a location where you can print it, for future reference and access; and
- Until or unless you notify Celsius Network Inc. as described above, you consent to receive exclusively through electronic means all notices, disclosures, authorizations, acknowledgements, and other documents that are required to be provided or made available to you by Celsius Network Inc. during the course of your relationship with Celsius Network Inc..