# EXHIBIT A

**quinn emanuel** trial lawyers | new york

51 Madison Avenue, 22nd Floor, New York, New York 10010-1601 | TEL (212) 849-7000 FAX (212) 849-7100

WRITER'S DIRECT DIAL NO.
**(212) 849-7471**

WRITER'S EMAIL ADDRESS
coreyworcester@quinnemanuel.com

June 18, 2021

**VIA ELECTRONIC MAIL**
MHURLEY@AKINGUMP.COM

Mitchell Hurley, Esq.
Akin Gump Strauss Hauer & Feld LLP
One Bryant Park
Bank of America Tower
New York, NY 10036-6745

Re:   Jason Stone

Dear Mr. Hurley:

We represent Jason Stone and KeyFi, Inc. and write in response to your letter of May 27.

*First*, Mr. Stone and KeyFi, Inc. are entitled to compensation under the Asset Purchase Agreement ("APA") and the Service Agreement. Celsius Network Limited ("Celsius") is required to pay Celsius KeyFi LLC a fixed percentage of the profits generated by the services Mr. Stone provided through Celsius KeyFi LLC under the Service Agreement. *See* APA § 3.1; Serv. Agreement Sched. B §§ 3, 4. The profits owed to Celsius KeyFi, LLC total to at least $120 million, net of costs. Of the profits due to Celsius KeyFi LLC, a portion is payable to KeyFi, Inc., and portion is due to Mr. Stone, in his capacity as CEO of Celsius KeyFi LLC, to distribute to himself and the other co-founders of KeyFi, Inc. as he sees fit. *See id.* The Service Agreement requires Celsius to calculate profits "for each coin across all activities," and to record such profits "in the number of tokens and in USD value." *Id.* § 6.2. Payments were to be made on a bi-monthly basis, though Celsius has not honored this requirement, and as a result Mr. Stone and KeyFi, Inc. are entitled to their unpaid, accumulated shares of the profits of Mr. Stone's activities. *Id.* § 6.4. Mr. Stone may elect to receive payouts of the profits owed to Celsius KeyFi LLC in U.S. Dollars or a combination of coins and U.S. Dollars, as he prefers. *Id.* Separate and apart from its obligation to provide Mr. Stone with his share of the profits via Celsius KeyFi LLC, Celsius is required to deliver at least 175,000 CEL tokens (presently worth over $1.2 million) to KeyFi, Inc., as compensation for KeyFi, Inc.'s commitments under the APA. *See* APA § 3.1. Celsius may not withhold the compensation it owes Mr. Stone and KeyFi, Inc. simply because it believes, without basis, that Mr. Stone did not return its assets quickly enough.

*Second*, Mr. Stone unequivocally denies misappropriating Celsius's property or unreasonably delaying in returning it.  As Celsius knows, Mr. Stone's investment strategy sometimes entailed investing Celsius's principal coins in other cryptocurrencies and digital assets, and, in some instances, resulted in a reduction of the total number of principal coins (but often an increase in their U.S. Dollar value).[1]  Mr. Stone has worked diligently to unwind Celsius's assets and return them to the 0xb1 wallet and other wallets, as Celsius instructed.  It is clear—and Celsius no longer seems to deny—that Celsius has, and always has had, the "keys" to the 0xb1 wallet and various other wallets, and thus ultimate control over their contents.  Celsius's assertion that it lacked "meaningful" control over the wallet is nonsensical, and in any case is belied by Celsius's unilateral liquidation of the 0xb1 wallet.  Likewise, Mr. Stone has provided the "keys" to the dYdX wallet to Celsius and Celsius promptly withdrew the contents of the dYdX wallet.[2]  If the process of returning Celsius's assets took longer than Celsius would have liked, much fault lies with Celsius's shifting demands and inconsistent positions as to what wallets and assets it owns and controls.

Any claim that Mr. Stone engaged in unauthorized transactions would be without merit.  The transactions that Celsius now complains of were always visible to Celsius via the blockchain, and were made with Celsius's consent as part of Mr. Stone's asset management strategy for Celsius KeyFi LLC.  For example, Celsius was well aware that Mr. Stone was investing in NFTs, and agreed that Mr. Stone would keep some of them as part of his compensation.  Likewise, Celsius was at all times aware that Mr. Stone was transferring assets to the dYdX wallet, obtaining coins via Badger, and periodically engaging in "giveaways" of certain coins.  In spite of Celsius's knowledge of these activities, it made no contemporaneous complaint to Mr. Stone.  As such, as all of these activities fall within the Service Agreement's broad definition of "Authorized Decentralized Finance Activities."  Serv. Agreement Sched. B § 1.3.  Furthermore, several of the complained-of transactions simply did not occur: for instance, Mr. Stone denies creating a "Cayman Islands NFT Fund" or any other entity that included Celsius assets.

Mr. Stone's and KeyFi, Inc.'s claims represent hundreds of millions of dollars in potential damages and, likely, serious reputational risks to Celsius if litigated.  Mr. Stone and KeyFi, Inc. remain open to mediation or a global out-of-court settlement but will enforce their rights if forced.

---

[1] Much of the loss of coins resulted from Celsius's failure to follow through on its representation to Mr. Stone that it was hedging Mr. Stone's exposure to ETH price volatility via impermanence loss on ETH holdings in liquidity pools.

[2] Should Celsius wish to verify, the blockchain shows the return of assets from the dYdX wallet, 0x000eb23FCFBBCb9Daac65bC4809376Ab0eF04c71, to the 0xcbcf5ee1c9b2356c8a064feff473991c2ce86152 wallet.

Very truly yours,

Corey Worcester