**UNITED STATES BANKRUPTCY COURT FOR THE**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>CELSIUS NETWORK LLC, et al.,<br><br>                        Debtor(s).<br><br>CELSIUS NETWORK LIMITED and CELSIUS KEYFI LLC,<br><br>                        Plaintiffs,<br>     v.<br><br>JASON STONE and KEYFI INC.,<br><br>                        Defendants. | Bankruptcy Case No. 22-10964-MG<br><br>Adversary Proceeding No. 22-01139-MG<br><br>(Jointly Administered) |

**DEFENDANTS' REPLY BRIEF IN SUPPORT OF**
**ITS MOTION TO DISMISS**

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................... ii

INTRODUCTION ................................................................................................................... 1

ARGUMENT ........................................................................................................................... 1

I.     Plaintiffs Fail to Plead a Claim for Turnover ................................................................. 1

     A.     The KeyFi Claim Evidences a Bona Fide Dispute. ................................................. 1

     B.     The APA and Services Agreement Control the Rights to the Withheld Property. ..... 3

II.     Plaintiff Fails to Plead a Claim for Conversion. ............................................................. 4

III.     Plaintiffs Fail to Plead a Claim for Fraudulent Misrepresentation. ........................................ 5

IV.     Plaintiffs Fail to Plead a Claim for Unjust Enrichment. ......................................................... 8

V.     Plaintiffs Fail to Plead a Claim for Replevin ........................................................................ 9

VI.     Plaintiffs Fail to Plead a Claim for Accounting ................................................................... 10

CONCLUSION ........................................................................................................................ 11

# TABLE OF AUTHORITIES

**Cases**

*AD Rendon Commc'ns, Inc. v. Lumina Americas, Inc.*,
   No. 04-CV-8832 (KMK), 2007 WL 2962591 (S.D.N.Y. Oct. 10, 2007) ................................. 4

*Aleem v. Experience Hendrix, L.L.C.*,
   No. 16 CIV 9206(ER), 2017 WL 3105870 (S.D.N.Y. July 20, 2017) ..................................... 9

*CBI Cap. LLC v. Mullen*,
   No. 19 CIV. 5219 (AT), 2020 WL 4016018 (S.D.N.Y. July 16, 2020) ................................. 10

*Citadel Mgmt., Inc. v. Telesis Trust, Inc.*,
   123 F.Supp.2d 133 (S.D.N.Y.2000) .................................................................................... 4, 5

*Ellington Credit Fund, Ltd. v. Select Portfolio Servicing, Inc.*,
   837 F. Supp. 2d 162 (S.D.N.Y. 2011) ..................................................................................... 10

*ESI, Inc. v. Coastal Power Prod. Co.*,
   995 F. Supp. 419 (S.D.N.Y. 1998) .......................................................................................... 10

*Geltzer v. Brizinova (In re Brizinova)*,
   592 B.R. 442 (Bankr. E.D.N.Y. 2018) .................................................................................. 4

*In re Pali Holdings, Inc.*,
   488 B.R. 841 (Bankr. S.D.N.Y. 2013) ................................................................................... 1

*In re Teligent, Inc.*,
   325 B.R. 134 (Bankr. S.D.N.Y. 2005) ................................................................................... 3

*In re VeraSun Energy Corp.*,
   No. 09-12606 (BLS), 2013 WL 3336870 (Bankr. D. Del. June 28, 2013) ............................. 1

*Keswani v. Sovereign Jewelry Inc.*,
   No. 20 CIV. 8934 (KPF), 2021 WL 4461332 (S.D.N.Y. Sept. 29, 2021) ............................. 10

*Kottler v. Deutsche Bank AG*,
   607 F.Supp.2d 447 (S.D.N.Y. 2009) ...................................................................................... 8

*LaMonica v. CEVA Group PLC*,
   582 B.R. 46 (Bankr. S.D.N.Y. 2018) ...................................................................................... 2

*Lovald v. Falzerano (In re Falzerano)*,
   686 F.3d 885 (8th Cir. 2012) .................................................................................................. 4

*Mandarin Trading Ltd. v. Wildenstein*,
   16 N.Y.3d 173 (2011) .............................................................................................................. 6

*Robotic Vision Sys., Inc. v. Cybo Sys., Inc.*,
  833 F. Supp. 189 (E.D.N.Y. 1993) .................................................................................. 5

*Strickland v. Bank of New York Mellon*,
  838 F. App'x 815 (5th Cir. 2020) ................................................................................... 6

*Thayer v. Dial Indus. Sales, Inc.*,
  85 F. Supp. 2d 263 (S.D.N.Y. 2000) ............................................................................... 7

**Other Authorities**

Merriam Webster Dictionary (11th Ed. 2022) ............................................................... 3

**INTRODUCTION**

As explained in Defendants' Motion to Dismiss, Plaintiffs First Amended Complaint is strategically fashioned to avoid the consequences of the two contracts that governed the Parties' relationship during the time it hired Stone and KeyFi to deploy billions of dollars' worth in customer funds. While the Court must accept Plaintiffs' allegations as true for purposes of this Motion, it may consider both the Asset Purchase Agreement (the "APA," attached as Exhibit 1) and the Services Agreement (attached as Exhibit 2) as both documents have been incorporated by reference into Plaintiffs' pleadings. When considering those agreements, and for the reasons set forth below, the Court should dismiss Plaintiffs' claims for turnover, conversion, fraudulent misrepresentation, unjust enrichment, replevin, and accounting claims.

**ARGUMENT**

**I.    Plaintiffs Fail to Plead a Claim for Turnover.**

   **A.    The KeyFi Claim Evidences a Bona Fide Dispute.**

The Amended Complaint plainly shows that ownership of the property at issue is in dispute as it details that Stone asserted a claim to the property by at least September 1, 2021. (FAC ¶¶ 41-43). Accordingly, because Plaintiffs' turnover claim is being "used to recover assets with disputed title when the estate's claim of ownership is legitimately debatable," the claim should be dismissed. *In re Pali Holdings, Inc.*, 488 B.R. 841, 852 n.39 (Bankr. S.D.N.Y. 2013).

Where a party "has raised rights to setoff and recoupment" and where the amounts at issue are "subject to litigation," a turnover claim is not proper. *In re VeraSun Energy Corp.*, No. 09-12606 (BLS), 2013 WL 3336870, at *4 (Bankr. D. Del. June 28, 2013). Like in *VeraSun*, the KeyFi Complaint evidences a "bona fide dispute" because it both shows that the Parties hotly dispute the amounts owed and the nature of the transactions at issue in the Amended Complaint.

1

The single turnover case Plaintiffs relies upon is inapposite. In *LaMonica v. CEVA Group PLC*, the chapter 7 appointed trustee identified $14 million (the "CIL Cash") that the debtor gave to the defendant because it did not "generally maintain bank accounts". 582 B.R. 46, 116 (Bankr. S.D.N.Y. 2018). The trustee further alleged that the defendant "acknowledged an intercompany payable" for the CIL Cash to the debtor and that the defendant "did not indicate that the amount was subject to dispute." *Id.* In response, the defendant pointed to certain annual reports that denied the entitlement "without explanation or support by any documentary evidence." *Id* at 118. In denying defendants motion to dismiss, the court held that the defendants' "mere denial of [the debtor's] entitlement to the CIL cash" is insufficient to establish that the "right to the CIL Cash is the subject of a bona fide dispute." *Id.*[1]

Here, Plaintiffs do not claim that the amounts at issue are not in dispute. Further, it cannot characterize the KeyFi Complaint as a "mere denial" of their rights to certain property. Rather, like the defendant in *VeraSun*, Defendants have asserted their rights to the property in dispute, and did so months before Plaintiffs brought this adversary proceeding.

Finally, Plaintiffs assert (at 9 n.2) that it refers to the KeyFi Complaint "only to acknowledge its filing and set forth Plaintiffs' strongly held view that the claims and allegations contained therein are entirely false, and indeed frivolous." While the Court need not incorporate the KeyFi Complaint to dismiss Plaintiffs' turnover claim, it also need not accept Plaintiffs' conclusory and unsupported assertion that the claims in the KeyFi Complaint are "entirely false,

---

[1] Plaintiffs' description of the materials the Court considered in *CEVA* is inaccurate. The Court *did* consider three annual reports cited by the Defendants that included an "explicit statement" disputing the claim, but *did not* consider an Offering Memorandum and Report to Bondholders that it found were outside the scope. *Id.* at 117. Further, and contrary to Plaintiffs' description, the Court did not find that any of those materials "would have put the subject property in dispute." *Id. compare with* Op. Br. at 10.

2

and indeed frivolous." Holding otherwise would allow debtors to plead a turnover claim where property is plainly in dispute merely by characterizing their adversaries' claims as "frivolous." Such a rule makes no sense, especially here where the KeyFi lawsuit was asserted prior to the initiation of these proceedings.

### B. The APA and Services Agreement Control the Rights to the Withheld Property.

Ownership of the Withheld Property turns entirely on the interpretation of Net Profits under the APA and the Services Agreement. Under both agreements, "twenty percent (20%) [of Net Profits] shall be attributed to [Celsius KeyFi]" and then "of [Celsius KeyFi]'s portion, 20% *shall further be attributed* to [KeyFi]." APA at Schedule 7.8(b)(4); Services Agreement at Schedule B(4). The use of the word "attribute" means that the portion of profits "belong" to KeyFi. *Attribute*, Merriam Webster Dictionary (11th Ed. 2022). (defining the word attribute to mean "an object closely associated with or belonging to a specific person, thing, or office"). Accordingly, ownership of the Withheld Property turns on the computation of Net Profits under both the APA and Services Agreement.

Plaintiffs allege that Stone was to deploy "Celsius' coins as CEO of Celsius KeyFi" "[p]ursuant to the APA and Services Agreement." FAC ¶ 21. While Plaintiffs acknowledge that the APA and Services Agreement governed Stone's use of Celsius coins, they've crafted their pleadings to avoid bringing claims for breaches of those agreements. Such artful pleading cannot be used to transform a contract claim to one of turnover. *In re Teligent, Inc.*, 325 B.R. 134, 137-38 (Bankr. S.D.N.Y. 2005) (citing "settled law that the debtor cannot use the turnover provisions to liquidate contract disputes") (citations omitted).

While Plaintiffs are correct to point out (at 14) that the definition of the types of property interests belonging to the estate should be construed expansively, none of the authority it cites (at

3

15) stands for the proposition that a turnover claim can be brought where there is a contract governing disputed ownership rights to certain assets. *See Geltzer v. Brizinova (In re Brizinova)*, 592 B.R. 442, 462 (Bankr. E.D.N.Y. 2018) (finding that where ownership of company "shares" are not in dispute, *post-petition* sale of those shares belong to estate); *Lovald v. Falzerano (In re Falzerano)*, 686 F.3d 885, 888 (8th Cir. 2012) (pointing out that the "BAP correctly concluded that our *NWFX* decisions 'did not recognize unjust enrichment as a basis for collecting a debt under § 542(a)'" and finding that a trustee's "claim for unjust enrichment based upon a debt owed was beyond the scope of § 542(a)."). While the analysis may be different under § 542(a) where ownership of property sold pre-petition *is not* subject to a bona-fide dispute, this case does not present such fact pattern.

## II. Plaintiffs Fail to Plead a Claim for Conversion.

Plaintiffs fail to cite any conduct separate and independent from conduct that would amount to a simple breach of the APA. "A conversion claim may only succeed if the party alleges a wrong that is distinct from any contractual obligations." *AD Rendon Commc'ns, Inc. v. Lumina Americas, Inc.*, No. 04-CV-8832 (KMK), 2007 WL 2962591, at *5 (S.D.N.Y. Oct. 10, 2007) (citation omitted). Accordingly, its conversion claim should be dismissed.

*Citadel Mgmt., Inc. v. Telesis Trust, Inc.*, 123 F.Supp.2d 133 (S.D.N.Y.2000) is instructive. There, the plaintiff loaned $11 million to defendants in return for defendants making periodic interest payments, assigning ownership of paintings to plaintiff, and returning the money to plaintiff at the end of the contract's term. *Id.* at 149. Defendants took the $11 million and then failed to perform any of their obligations under the contract. *Id.* Instead, defendants immediately transferred plaintiff's funds out of plaintiff's account, failed to assign the paintings, failed to make any interest payments, and failed to transfer the $11 million back to plaintiff on the agreed-upon date. *Id.* Nevertheless, the court dismissed plaintiff's conversion claim as

duplicative because "[n]o separately actionable wrong was committed when [the defendant] transferred the funds to the other[s]." *Id.* at 150. Furthermore, (like here) the plaintiff would have been fully compensated if it prevailed on its breach of contract claim. *Id.* at 149.

Like the plaintiff in *Citadel*, Plaintiffs do not allege any separate actionable wrong that occurred outside of a potential breach of the APA. Their allegations that the Defendants (1) disposed of assets in a manner not authorized by Celsius, (2) wrongfully converted Celsius assets into other forms of property, (3) transferred Celsius assets to others, (4) sold assets, and (5) refused to return certain assets all consist of conduct that is governed by the APA. *Compare* FAC ¶¶ 52-55 *with* APA at Schedule 7.8 (describing "Authorized" activities).

Plaintiffs' reliance on *Robotic Vision Sys., Inc. v. Cybo Sys., Inc.*, 833 F. Supp. 189 (E.D.N.Y. 1993) evidences the doomed nature of its conversion claim. There, the Court summarily concluded that the question of whether a claim for conversion had been stated is a "mixed question of law and fact" and noted that "the plaintiff had ample opportunity to move to dismiss [the conversion claim] when it previously moved to dismiss." *Id.* at 193. In light of the party's failure to move on its initial motion, the Court found that "piecemeal motion practice does not assist the litigants in arriving at a just and timely resolution of this action." *Id.* Because Defendants previously moved to dismiss the conversion claim, the holding is inapposite.

### III. Plaintiffs Fail to Plead a Claim for Fraudulent Misrepresentation.

Plaintiffs attempt to elide their pleading failures by reference to generalized statements from Stone, but these references still fail to allege why those statements were fraudulent or how they demonstrate fraudulent intent.[2] It is necessary to go statement by statement and ensure that

---

[2] Additionally, Plaintiffs have dropped any pretense that they have valid claims for fraudulent misrepresentation against KeyFi. As argued in Defendants' Motion to Dismiss, the Amended

5

the Amended Complaint meets the pleading standard with regard to each statement separately. *Strickland v. Bank of New York Mellon*, 838 F. App'x 815, 820 (5th Cir. 2020) ("For each fraudulent representation made as the basis of Stricklands' claims, they must show who *made the statement, where and when it was made, and why it was fraudulent*." (emphasis in original). Performing this analysis illustrates that Plaintiffs have not alleged fraudulent misrepresentation with the requisite specificity.

*First*, Plaintiffs argue that "in an email on August 18, 2020, Stone reassured Celsius personnel that Defendants 'would not open ourselves up to impermanent loss' in connection with investing Celsius' coins." FAC ¶ 30. Plaintiffs have entirely failed to explain how this email was fraudulent—there are no allegations that the statement was false and *known to be false* when made. *See Mandarin Trading Ltd. v. Wildenstein*, 16 N.Y.3d 173, 178 (2011) (plaintiff must allege "a misrepresentation or a material omission of fact which was false and *known to be false by defendant*.") (emphasis added). Plaintiffs have made no allegations that this statement was known to be false when made. Reading the FAC in the light most favorable to Plaintiffs, all they have alleged is that "Stone and KeyFi failed to hedge against these and other risks." *Id.* ¶ 31. This is not an allegation that Stone knowingly misled Plaintiffs, but instead, at most, an allegation that he overpromised.

Additionally, Plaintiffs cannot establish that they reasonably relied on this statement. On the contrary, one of the Plaintiffs – Celsius KeyFi – *didn't even exist* in August 2020. And while it is certainly convenient for Celsius to claim now that it was Stone's responsibility to hedge, the contract between the parties made clear it was not. Specifically, in the APA, Stone (as Celsius

---

Complaint doesn't allege any misrepresentations by KeyFi and the Opposition fails to argue otherwise. This count, therefore, must be dismissed as to KeyFi.

6

KeyFi's CEO) was only authorized to engage in "approved activities." APA Schedule 7.8(b)(6). "Approved activities" was defined to mean: "Staking Coins, Staking Plus Coins and Authorized Decentralized Finance Activities." That last term (Authorized Decentralized Finance Activities) was further defined to mean "authorized activities which earn coins from lending, borrowing, high frequency liquidity provisions, and other authorized activities." *Id.* § 7.8(b)(1)(b). Conspicuously missing is approval to "hedge." This is fatal to Plaintiffs' claim. "Under New York law, reasonable reliance is precluded when an express provision in a written contract contradicts a prior alleged representation in a meaningful fashion." *Thayer v. Dial Indus. Sales, Inc.*, 85 F. Supp. 2d 263, 272 (S.D.N.Y. 2000). Stone was not contractually authorized to engage in hedging transactions; therefore, as a matter of law, Plaintiffs cannot show that they reasonably relied on any promise by Stone to do so.

*Second*, Plaintiffs allege (at 19) assert that "[l]ater, on January 28, Stone told Celsius' Financial Risk Officer that Defendants were using a platform called dYdX to hedge (FAC ¶ 30)." Yet Plaintiffs do not allege that this very general statement was false, much less known to be false when made.

Furthermore, as explained above, any deployment of Celsius assets into a hedging strategy would have been unauthorized and in breach of the APA and the Service Agreement—unless it was approved by Celsius. A single comment made to a single individual months into the parties' relationship and weeks after the APA was entered into could not *reasonably* have been relied upon to suggest that Stone was hedging billions of dollars of customer funds.[3]

---

[3] Plaintiffs argue (at 20) that Stone's alleged use of Tornado Cash undermines that they could track his behavior, but the Complaints allegations regarding the use of Tornado Cash only span from May 23, 2021 through September 2021, or well after Stone had resigned from Celsius. *See* FAC ¶ 25.

7

*Third*, Plaintiffs allege (at 19) that: "At meetings held on an approximately weekly basis in the fall of 2020, Defendants repeatedly and consistently stated that Defendants' deployments of Celsius' coins for authorized staking and DeFi activities were profitable…" FAC ¶ 22. These allegations are vague and general as to what was said and when. Furthermore, Plaintiffs fail to allege that any such statements by Stone were false. Plaintiffs *misquote their own pleading* to argue (at 19) that "[i]n reality, all the while, KeyFi's deployments suffered substantial losses." (citing FAC ¶ 41). But paragraph 41 instead relays Stone's contention that he *was* profitable, and that it was only due to Celsius' lack of internal controls and risk management that it had turned his USD profits into token-based losses.

*Fourth*, Plaintiffs allege that on March 26, 2021, Stone made promises to return Celsius assets in reliance on which "Plaintiffs did not pursue legal action, which gave Defendants the opportunity to fund unauthorized wallets for unauthorized purposes, to steal additional assets from Celsius, and to utilize Tornado Cash to conceal their theft (FAC ¶¶ 28–37)." Yet it is Plaintiffs that waited *a year and a half* after this March 2021 statement to file this lawsuit, and only after Stone first sued them. It is implausible that Stone's statements on March 26, 2021, caused Plaintiffs' years' long delay ending with the filing of this adversary case. Stone's supposed assurance were not the but-for cause of any injury Plaintiffs. Furthermore, again, Plaintiffs have failed to allege, with specificity, that Stone knew these to be false when made.

### IV.    Plaintiffs Fail to Plead a Claim for Unjust Enrichment.

Plaintiffs cite law that it is permissible to plead an alternative theory of unjust enrichment "where there is a bona fide dispute as to the existence of a contract or where the contract does not cover the dispute in issue." *Kottler v. Deutsche Bank AG*, 607 F.Supp.2d 447, 468 (S.D.N.Y. 2009). However, there is no bona fide dispute regarding the existence of a contract—indeed Celsius has repeatedly cited the numerous governing contracts. *See, e.g.*, Op. Br. at 3-4; FAC ¶¶

8

18, 21, 75, 85. Yet, inexplicably, Plaintiffs have not pled breach of contract. Rather, because the Parties' agreements contradict Plaintiffs' theories of relief, they are seeking to avoid them and proceed in equity instead.

Plaintiffs attempt to avoid the APA and Services Agreement by claiming that they have "allege[d] that there is no contract governing the extra-contractual misconduct at issue, much of which took place after the time when the contracts cited by Defendants were enforceable." Op. Br. at 22. However, they don't articulate any reasons why the contracts would not govern the alleged failure to return property advanced under the APA and Service Agreement or when the contracts at issue became unenforceable. While Plaintiffs cite authority that permit unjust enrichment cases or quantum meruit cases when there is a bona fide dispute as to the existence of a contract, Plaintiffs in those cases pled breach of contract and the equitable claim was pled *in the alternative*. Here, by contrast, Plaintiffs appear to be avoiding the APA and Services Agreement in the hope that they will not be held to account under them.

## V.    Plaintiffs Fail to Plead a Claim for Replevin

"Under New York law, an action for conversion and replevin should proceed under a contract theory when the plaintiff is essentially seeking enforcement of a contractual duty." *Aleem v. Experience Hendrix, L.L.C.*, No. 16 CIV 9206(ER), 2017 WL 3105870, at *5 (S.D.N.Y. July 20, 2017). Plaintiffs claim (at 24) that they "are not seeking enforcement of a contractual duty. Indeed, Plaintiffs do not bring any claims for breach of contract." Although that's true, so much the worse for Plaintiffs. The mere avoidance of pleading breach of contract doesn't validate their claim for replevin. *Id*. (holding that "courts have dismissed actions for … replevin that merely recast a claim for breach of contract even after finding" that the contract claim fails).

Plaintiffs defend their decision not to file a claim for breach of contract on the specious grounds "that Defendants' misconduct was outside the scope of the contracts and/or post-dated

9

any relevant contracts." Op. Br. at 24. This amounts to a claim that Plaintiffs, on their own authority, can and have determined the metes and bounds of the parties' contracts and so the Court need not consider them at all. Parties cannot simply dress up their allegations to characterize claims sounding in contract as sounding in tort. *See, e.g.*, *ESI, Inc. v. Coastal Power Prod. Co.*, 995 F. Supp. 419, 432 (S.D.N.Y. 1998) (*"*A plaintiff may not recast a contract-based claim as a tort claim where plaintiff is essentially seeking enforcement of the contractual bargain.") (cleaned up). Plaintiffs' FAC, which studiously avoids the governing contracts, is precisely the type of pleading this rule is designed to prevent.

## VI.     Plaintiffs Fail to Plead a Claim for Accounting

Finally, Plaintiffs claim for an accounting must be dismissed as improperly pled. In particular, as argued above and despite Plaintiffs' window dressing, the parties' dispute remains a contractual dispute regarding the allocation of profits. Plaintiffs cannot convert their contractual claims into equitable claims merely by avoiding their contracts. And the law is clear that "an equitable accounting claim cannot coexist with a breach of contract claim covering the same subject matter." *CBI Cap. LLC v. Mullen,* No. 19 CIV. 5219 (AT), 2020 WL 4016018, at *7 (S.D.N.Y. July 16, 2020) (citing *Ellington Credit Fund, Ltd. v. Select Portfolio Servicing, Inc.*, 837 F. Supp. 2d 162, 207 (S.D.N.Y. 2011)). In sum, Plaintiffs do not need any claim for equitable accounting because Plaintiffs do not lack a remedy at law giving rise to an equitable claim. *See Keswani v. Sovereign Jewelry Inc.*, No. 20 CIV. 8934 (KPF), 2021 WL 4461332 (S.D.N.Y. Sept. 29, 2021) (noting that a Plaintiffs' "frustration related to his inability to pin down the precise amount of money that Defendants believe he owes them," an action for an equitable accounting does not lie where there is an adequate remedy at law).

## **CONCLUSION**

For the foregoing reasons, the Court should dismiss the First (turnover), Second (conversion), Third (fraudulent misrepresentation), Fifth (unjust enrichment), Sixth (replevin) and Seventh (accounting) causes of action as to all Defendants.

Dated: December 2, 2022                                **KYLE ROCHE P.A.**

*/s/ Kyle W. Roche*
Kyle W. Roche
260 Madison Ave., FL 8
New York, NY 10016
kyle@kyleroche.law

*Counsel for Defendants*