Mitchell P. Hurley
Dean L. Chapman Jr.
AKIN GUMP STRAUSS HAUER & FELD LLP
One Bryant Park
New York, New York 10036
Telephone: (212) 872-1000
Facsimile: (212) 872-1002

Elizabeth D. Scott (admitted *pro hac vice*)
2300 N. Field Street, Suite 1800
Dallas, TX 75201
Telephone: (214) 969-2800
Facsimile: (214) 969-4343
edscott@akingump.com

*Special Litigation Counsel for Debtors and
Plaintiffs Celsius Network Limited and
Celsius KeyFi LLC*

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>CELSIUS NETWORK LLC, *et al.*,<br><br>　　　　　　Debtors. | Bankruptcy Case No. 22-10964 (MG) |
| CELSIUS NETWORK LIMITED and<br>CELSIUS KEYFI LLC,<br><br>　　　　　　Plaintiffs,<br><br>　　　　v.<br><br>JASON STONE and KEYFI INC.,<br><br>　　　　　　Defendants. | Adversary Proceeding<br>No. 22-01139 (MG) |

**PLAINTIFFS' REPLY MEMORANDUM IN SUPPORT OF MOTION FOR
PRELIMINARY INJUNCTION**

**TABLE OF CONTENTS**

**Page**

INTRODUCTION ...............................................................................................................................1
ARGUMENT.....................................................................................................................................1
    I.     Celsius Is Likely to Prevail on the Merits of Its Claims ...........................................1
    II.    Celsius Will Suffer Irreparable Harm Absent the Injunction ..................................6
    III.   The Equities Counsel in Favor of an Injunction Because Defendants Seek
            to Dispose of the Exact Property Subject to Equitable Claims..............................10
CONCLUSION................................................................................................................................10

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Daye Nonferrouse Metals Company v. Trafigura Beheer B.V.*,
  No. 96 Civ. 9740 (RWS), 1997 WL 375680 (S.D.N.Y. Jul. 7, 1997) ......................................7

*Env't Servs., Inc. v. Recycle Green Servs, Inc.*,
  7 F. Supp. 3d 260 (2014) ...............................................................................................10

*Gelfand v. Stone*,
  727 F.Supp. 98 (S.D.N.Y. 1989)...................................................................................6, 7

*Goat Fashion Ltd. v. 1661, Inc.*,
  No. 19 CIV. 11045 (PAE), 2020 WL 5758917 (S.D.N.Y. Sept. 28, 2020).............................9

*Heissenberg v. Doe*,
  No. 9:21-cv-80716-ALTMAN/Brannon, 2021 WL 8154531 (S.D. Fla. Apr. 23, 2021) ..............................................................................................................................7

*Marks Organization, Inc. v. Joles*,
  784 F. Supp. 2d 322 (S.D.N.Y. 2011)...............................................................................9, 10

*R.B. Dev. Co. Ltd. v. Tutis Capital LLC*,
  No. 12-cv-01460 (CBA) (SMG), 2013 WL 12358006 (E.D.N.Y. Sept. 26, 2013) ......................................................................................................................................2

*S.E.C. v. Am. Bd. of Trade, Inc.*,
  830 F.2d 431 (2d Cir. 1987)...........................................................................................4, 7

*Serio v. Black, Davis & Shue Agency, Inc.*,
  No. 05 civ. 15 (MHD), 2005 WL 3642217 (S.D.N.Y. Dec. 30, 2005).....................................6

*Tenamee v. Schmukler*,
  438 F. Supp. 2d 438 (S.D.N.Y. 2006)..............................................................................8

*United States ex rel. Rahman v. Oncology Assoc.*,
  198 F.3d 489 (4th Cir. 1999) ...........................................................................................7

*United States v. Carson*,
  52 F.3d 1173 (2d Cir. 1995).............................................................................................8

*Wishnatzki & Nathel, Inc. v. H.P. Island-Wide, Inc.*,
  No. 00 Civ. 8051 (JSM), 2000 WL 1610790 (S.D.N.Y. Oct. 27, 2000) ..................................6

**INTRODUCTION**

As Celsius demonstrated in its opening submissions, Defendants transferred millions of Celsius' coins, and NFTs acquired with Celsius' coins, from Celsius' wallets, to Defendants' own wallets, without authorization (the "Utilized Assets").[1] By its Motion, Celsius seeks an injunction preventing Defendants from using or further secreting the Utilized Assets, or any proceeds of the Utilized Assets (with the Utilized Assets, the "Property"), so that the Property will be available for disposition in accordance with the Court's direction at the end of the case.[2] Remarkably, ***Defendants admit that they took Celsius' Property***, do not even try to justify their theft of Celsius' coins, and offer only Defendant Stone's unsupported, self-serving declaration as a purported excuse for misappropriating NFTs. Based on this proven misconduct, Celsius is highly likely to succeed on its claims for return of the Property and for damages. Since Defendants concede that they will dissipate the Property absent an injunction—which would leave Celsius with no adequate remedy should it prevail in the case—the injunction Motion should be granted.

**ARGUMENT**

**I.    Celsius Is Likely to Prevail on the Merits of Its Claims**

As detailed in the Motion—and conceded by Defendants—Defendants used their access to Celsius' private keys to transfer coins and other digital assets worth millions of dollars from

---

[1] Capitalized terms used but defined herein have the meaning given them in the Plaintiffs Motion for Preliminary Injunction [No. 22-01139-mg, ECF No. 21] (the "Motion").

[2] In Defendants' November 28, 2022 opposition to the Motion (the "Opposition"), for the first time Defendants say they do not oppose any of the relief sought by the Motion other than the injunction requiring Defendants not to further use or secrete Celsius' Property. Opp. 13. But in September, Celsius asked Defendants in writing to voluntarily agree to the relief Celsius now seeks (Hurley Decl. Exs. 40, 42), and Defendants refused to agree to *any* of that relief. *Id.*, Ex. 41. By delaying their consent until the eve of the hearing on the Motion, Defendants may unnecessarily have cost the parties, the Court and creditors substantial resources. Time will tell if Defendants will stand by their new position. After reviewing the Opposition, Celsius sent Defendants a proposed Stipulation and Order providing for all of the relief sought by the Motion other than the request for an injunction of transfers of the Property. which is reserved for decision by the Court. *See* Supplemental Declaration of Mitchell Hurley (the "Supp. Hurley Decl.") ¶ 3, Ex. 1. As of December 5, 2022, Defendants had not executed the Stipulation and Order providing the relief they claim not to oppose.

1

Celsius' wallets to their own wallets, and failed to return, and may have stolen, countless other coins entrusted to them by Celsius and never returned as well. Mot. at 8–10. Defendants do not seriously contend that Celsius failed to allege the elements of conversion, turnover, unjust enrichment or any of the other claims alleged in the Complaint based on this misconduct.

Instead, Defendants claim that their appropriation of Celsius' Property can give rise only to a claim for breach of contract. Opp. at 3, 10. But that is false. As a preliminary matter, and as Defendants studiously avoid mentioning, **neither Defendant even is a party to the Service Agreement on which they rely**.[3] Mot. at SOF § A. And the detailed evidence and allegations of theft presented by Celsius on its Motion go far beyond any mere contract dispute even if Celsius had alleged breach of contract (it did not) or conceded that the Defendants' conduct was governed by contract (it does not). *R.B. Dev. Co. Ltd. v. Tutis Capital LLC,* No. 12-cv-01460 (CBA) (SMG), 2013 WL 12358006, *18–20 (E.D.N.Y. Sept. 26, 2013) (sustaining conversion and unjust enrichment claims where existence of valid, governing agreement in dispute, and plaintiff alleges "wrongful or unlawful" acts like theft).

Defendants' contract-based arguments also simply do not add up. Defendants try to justify having stolen Celsius' assets by claiming that they were entitled to "profit share" under the Service Agreement (again, an agreement to which neither Defendant was a party). Opp. at 3–4, 6, 15–16. But they offer no proof of any profits; on the contrary, Defendants specifically assert that Celsius provided them $2 billion worth of coins, and that Defendants only returned $1.3 billion worth. *Id.* at 6, 9. If true, it would mean a massive loss, not a profit, just as Celsius contends. *See* Holert

---

[3] Defendants also sometimes cite to the APA. However, not only was Stone not a party to the APA, it involved an asset purchase transaction that closed nearly two years ago. Moreover, the APA "Summary of Key Terms" on which Defendants primarily rely were expressly supplanted by the terms of the integrated Services Agreement.

2

Reply Decl. ¶ 5.[4] While Defendants are correct that the Service Agreement contemplates the *possibility* that profits *might* be earned, and includes a schedule for "payouts" if profits were earned, of course that does not mean that any profits actually *were* earned. *Compare* Opp. at 15.[5]

In any case, even if profits had been generated, nothing in either agreement remotely suggests that Defendants were authorized to seize Celsius' assets in payment of amounts allegedly due under the Service Agreement (to which they were not parties). Indeed, the Service Agreement provides specifically that any profits would belong to Celsius, and any share would be paid by Celsius to Celsius KeyFi, not expropriated by Defendants. Hurley Decl. Ex. 31 ¶¶ 3–4, Sched. B (note that "KeyFi" in Service Agreement refers to Celsius KeyFi, not Defendant KeyFi). Defendants clearly recognize that the contracts do not authorize them to just take Celsius' property for themselves. That is why Stone invents the additional claim in his November 28, 2022 affidavit that Alex Mashinsky *orally* authorized Defendants to do so. Stone Aff. ¶ 13.[6]

Stone does not purport to identify when the authorization supposedly was given, the number of coins Mashinsky said he could take, or how anyone could know the amount to which Defendants would be entitled given that Stone also alleges no computation of profits had been undertaken. *See generally* Stone Aff. Nor does Stone present a scrap of documentary evidence in

---

[4] Celsius served document requests on Defendants on September 28, 2022. Responses were due on October 28, 2022, and Defendants promised to begin a rolling production the week of November 14, 2022. To date, however, Defendants have yet to produce a single page of discovery. Subject to receipt of discovery or other information, Celsius currently believes the value of the coins lost or stolen by Defendants is smaller than $700 million, but still materially in excess of $100 million.

[5] Defendants assert that Celsius continued to send coins to Defendants through February, 2021, and, hence, Defendants' activities must have been generating profits. Opp. at 15–16. Even if true, it would mean no such thing. Celsius has alleged in detail that it was unable to determine the results of Defendants' performance, but that Defendants' continually claimed profits had been generated. *See Reply Declaration of Patrick Holert in Further Support of Celsius' Motion for Preliminary Injunction* (the "Holert Reply Decl.") ¶ 5. Celsius did not discover until later, when Defendants failed to return huge numbers of coins, that Defendants were lying. *Id.*

[6] Notably, however, Defendants did not mention Mashinsky when asked to identify witnesses for the hearing, and to Celsius' knowledge Defendants have made no effort to take Mashinsky's deposition concerning their assertion. Similarly, though the Defendants claim that Celsius' former CFO Harumi Urata-Thompson was a witness for at least a portion of the putative conversations on which they purport to rely, they have not offered a declaration from, or sought to depose, Ms. Urata-Thompson either.

support of his claim: not a letter, not an email, not a WhatsApp exchange, not a text message, not a voice-mail, ***nothing***. *Id*. *passim*. Mashinsky is no longer employed by Celsius and is not a witness under Celsius control. After Stone's November 28, 2022 declaration was filed, however, Mashinsky provided a declaration refuting Mr. Stone's assertion. *See Dec. 5, 2022 Declaration of Alex Mashinsky in Support of Plaintiffs' Motion for a Temporary Restraining Order and Preliminary Injunction* (the "Mashinsky Declaration"). According to Mr. Mashinsky, he ***did not authorize*** Defendants to use Celsius' assets to purchase NFTs, for themselves or otherwise, nor did he authorize Defendants to take for themselves any such NFTs, or to transfer any coins, NFTs or other property from Celsius' wallets to their own wallets for any reason. Mashinsky Decl. ¶ 4.

Stone's claim is counter to the undisputed facts as well. Defendants carried out virtually all of their thefts ***after*** Stone purported to resign as CEO; ***after*** Celsius instructed Defendants to cease deploying, unwind and return all Celsius' property; and ***after*** Stone promised repeatedly in writing that he would do so. Mot. at 4, 9–12. Self-serving claims of this kind, unsupported by any documentary evidence, should be disregarded in considering a properly supported motion for injunctive relief. *See S.E.C. v. Am. Bd. of Trade, Inc.*, 830 F.2d 431, 438–39 (2d Cir. 1987) (upholding freeze of defendants' assets where SEC offered substantial evidence that defendant owed debt and defendants offered no documentary evidence to support their claim for offset allegedly based on management fees owed them). And without Stone's *ipse dixit* claim of oral authorization, none of Defendants' other (equally unsupported) claims matter. That is because not even Defendants claim that they had a right under the Service Agreement or otherwise to seize Celsius' Property. Again, that is why Stone makes his evidence-free "oral authorization" claim in the first place.

4

But even if Stone's wild claim could be credited, it still would not defeat the Motion. According to Stone, Mashinsky authorized him to take coins from a Celsius wallet as an "advance," Stone used the coins "advanced" to purchase NFTs, then transferred the purchased NFTs from Celsius' wallet "to other accounts KeyFi and [Stone] controlled." Stone Aff. ¶¶ 14, 15, 23.[7] These NFTs are the only items of transferred property that Stone actually claims were his to take. Hence, while false, unsupported, and directly contradicted by Mashinsky's testimony (Mashinsky Decl. ¶¶ 3, 4) even by its terms, Stone's claim does not extend to the *other property* that Celsius has proven Defendants stole and that also is the subject of the Motion.[8]

As only the most egregious example, the Motion demonstrates that, in September, 2021— *six months after Stone claims he resigned as Celsius' CEO*—Defendants used their access to Celsius' private keys to access a Celsius wallet and steal DAI stable coins worth $1.4 million dollars. Mot. at 12; Sabo Decl. ¶¶ 30–32. Defendants then converted the $1.4 million DAI into ETH, and laundered the ETH by transferring it through the banned mixer, Tornado Cash. Mot. at 12; Sabo Decl. ¶ 33. ***Remarkably, Stone does not even mention this extraordinary misconduct, much less deny or attempt to justify it.*** And the same goes for all of the other non-NFT transfers

---

[7] Not even Stone contends that anyone at Celsius authorized him to buy NFTs, only that he believes Celsius was "aware of these purchases." *Id. ¶* 15.

[8] Celsius has identified substantial property converted by Defendants in addition to any NFTs, including as described in Celsius opening submissions. That may only be the tip of the iceberg, however. Defendants failed to return Celsius property that is worth vast sums, and for which Defendants have never accounted. In its Motion, Celsius points out that the Defendants refused to identify for the record and under oath the property they took from Celsius. Br. at 14. The Defendants now claim this assertion is "false" because, on April 7, 2022, the Defendants' counsel sent an email expressly subject to Rule 408 in which he identified certain of the stolen and converted property, subject to an express oral reservation that the list might not be complete. Opp. at 14. Defendants waived the protection of Rule 408 by putting the April 7, 2022 communication at issue. But counsel's unsworn email penned months ago is no substitute for a current, comprehensive, sworn statement from the Defendants, subject to this Court's contempt powers, identifying all of the property they stole and its current form and location. That is what Celsius sought, and that is what the Defendants expressly refused to provide. As noted above, on December 2, 2022, Celsius sent a Stipulation and Order to Defendants providing the relief they now say they concede, which includes a requirement that they prepare a sworn statement identifying all Property at issue. *See* Supp. Hurley Ex. 1. As of this filing, Defendants have not executed the Stipulation and Order.

5

identified in the Motion. With respect to these coin transfers, Defendants have no answer, not even the vague, unsupported and self-serving excuse they offer for stealing NFTs.[9] Certainly, Defendants have failed to rebut Celsius' evidence-based showing of (at least) "sufficiently serious questions going to the merits to make them a fair ground for litigation." *See Gelfand v. Stone*, 727 F.Supp. 98, 102 (S.D.N.Y. 1989). Nothing more is required for Celsius to prevail on its Motion.

## II.    Celsius Will Suffer Irreparable Harm Absent the Injunction

Defendants expressly admit that, unless they are enjoined, they will continue to dissipate Celsius' Property, and that Defendant KeyFi has no other assets to satisfy any judgment. Opp. at 5, 14, 17. Defendants nevertheless argue that the Court cannot issue an injunction because any harm Plaintiffs may suffer would be compensable by monetary damages. *Id.* at 14.

Defendants are mistaken. First, Plaintiffs have an equitable interest in—and have asserted equitable causes of action (*e.g.,* turnover, conversion, unjust enrichment) and equitable remedies (*e.g.,* constructive trust and disgorgement) with respect to—the assets that would be subject to the injunction. Courts in this Circuit consistently have held that, in this context, a court may grant injunctive relief in order to preserve the status quo and ensure that it is in a position to grant meaningful relief at the conclusion of the litigation. *See, e.g.*, *Serio v. Black, Davis & Shue Agency, Inc.*, No. 05 civ. 15 (MHD), 2005 WL 3642217, *9 (S.D.N.Y. Dec. 30, 2005) (finding preliminary injunctive relief warranted where the freeze order sought by plaintiff was "designed to preserve the viability of an equitable final remedy . . . and it targets specific assets in which [plaintiff] has a claim of title, and this of necessity gives the court the authority to consider an asset-freeze motion"); *Wishnatzki & Nathel, Inc. v. H.P. Island-Wide, Inc.*, No. 00 Civ. 8051 (JSM), 2000 WL 1610790, at *1 (S.D.N.Y. Oct. 27, 2000) ("When the plaintiff creditor asserts a cognizable claim

---

[9]    Celsius also alleges that the coins Stone admits he failed to return may have been stolen by Stone, another allegation that he does not address. Mot. at 11–13.

6

to specific assets of the defendant or seeks a remedy involving those assets, a court may in the interim invoke equity to preserve the status quo pending judgment.") (quoting *United States ex rel. Rahman v. Oncology Assoc.*, 198 F.3d 489, 494-98 (4th Cir. 1999)). "Even when a plaintiff asserts multiple claims, some sounding in law and others in equity, the court may use its equitable powers to preserve assets if done for the satisfaction of a potential judgment on the equitable claims." *Serio*, 2005 WL 3642217 at *9.[10]

Moreover, "[i]n this circuit, although injuries compensable by monetary damages ordinarily do not give rise to irreparable harm, 'a demonstration of intent to frustrate a [monetary] judgment will satisfy the requirement for a preliminary injunction of a showing of irreparable harm.'" *Daye Nonferrouse Metals Company v. Trafigura Beheer B.V.*, No. 96 Civ. 9740 (RWS), 1997 WL 375680, *5 (S.D.N.Y. Jul. 7, 1997) (citing *Gelfand v. Stone*, 727 F.Supp. 98, 100 (S.D.N.Y. 1989) (holding that "substantial evidence of [defendant's] past fraudulent activities . . . indicate[d] clearly that [defendant's] past predilection for deceptive and fraudulent practices [would] likely . . . continue.")). Defendants' own admission that Plaintiffs' requested relief would leave KeyFi "without resources necessary to defend itself in this litigation and to pursue its claims against Celsius," indicates Defendants' need and intent to dispose of the subject Property. Opp. at 5, 14, 17. Thus, there is a clear danger that Defendants will have depleted their assets in the absence of an injunction. *See S.E.C.*, 830 F.2d at 438–39 (finding risk of irreparable harm where

---

[10]  Defendants also argue that Celsius' citations to various cases concerning anonymous cyber thefts (Mot. at 17) are inapposite because Defendants have not threatened to remove assets from this Court's jurisdiction. Opp. at 14–15. But this assertion is inconsistent with Defendants' own admission that they must use the Property to fund this and other litigation. *Id*. at 5, 14, 17. Moreover, as a general matter, the speed and potential anonymity of cryptocurrency transactions supports Plaintiffs' showing of irreparable harm. *See Heissenberg v. Doe*, No. 9:21-cv-80716-ALTMAN/Brannon, 2021 WL 8154531, at *2 (S.D. Fla. Apr. 23, 2021).

7

defendant admitted in an affidavit that defendant's income was insufficient to meet their living expenses).[11]

Defendants also are mistaken in arguing that no irreparable harm could exist because Celsius did not bring this Motion sooner. As just explained, Defendants expressly admit that they will further dissipate the Property in the absence of an injunction, which constitutes irreparable harm. Moreover, the timing of Celsius' Motion was justified under the circumstances. First, after Celsius demanded the return of its Property, Defendants repeatedly promised they would return *all* of Celsius' coins, including in writing. *See* Hurley Decl. Exs. 34, 35. Over time, Defendants did return substantial amounts of Celsius Property, though their promise to return everything turned out to be false. *Cf. Tenamee v. Schmukler*, 438 F. Supp. 2d 438, 444–45 (S.D.N.Y. 2006) (rejecting time-based defense where plaintiff delayed action based on defendant's false claims) (citation omitted).

The parties' attempts at voluntary resolution were also complicated by Defendants' frequent replacement of their counsel.[12] Each time Defendants hired new counsel, negotiations had to re-start. *See* Supp. Hurley Decl. ¶ 4. Moreover, when Defendants last firm (Roche Freedman) fist contacted Celsius, on September 1, 2021, they asked Celsius to enter into a tolling and standstill agreement to allow for confidential mediation, and Celsius agreed. *Id.* ¶ 5, Ex. 2. Following formal mediation in December, 2021, the parties' settlement discussions continued for

---

[11] Defendants' past wrongful conduct in dissipating assets is highly relevant to the analysis of the threat of its further dissipation of those assets during the pendency of this litigation. *See, e.g.*, *United States v. Carson*, 52 F.3d 1173, 1184 (2d Cir. 1995) (in the injunction context, "[c]ourts are free to assume that past misconduct is 'highly suggestive of the likelihood of future violations'"); *see also* Mot. at 7–12 (describing Defendants' past fraudulent conduct).

[12] Defendants apparently dismissed their original counsel (or he quit), hired another law firm, dismissed that firm (or it quit), and then hired Mr. Roche's former firm, then known as Roche Freedman. *See* Supp. Hurley Decl. ¶ 4. Mr. Roche later was expelled from his firm amid allegations of misconduct, and now practices from his own private firm, Defendants' fourth law firm in this matter. Mot. at 3.

8

an extended period of time, and the standstill agreement was extended periodically through June 24, 2022, just weeks before Celsius' bankruptcy filing. *Id.* ¶ 6. "[G]ood-faith attempts at settlement" of this kind "are acceptable justifications for delay." *Goat Fashion Ltd. v. 1661, Inc.*, No. 19 CIV. 11045 (PAE), 2020 WL 5758917, at *6 (S.D.N.Y. Sept. 28, 2020) (excusing delay in filing preliminary injunction motion where "delay was a result of good-faith investigation and hopes of settling"); *see also Marks Organization, Inc. v. Joles*, 784 F. Supp. 2d 322, 333 (S.D.N.Y. 2011) (granting a preliminary injunction nearly sixteen months after the plaintiff's learned of defendant's harmful conduct where delay was partially attributable to settlement discussions).

By the time negotiations broke down between Plaintiffs and Defendants in June 2022, Celsius was actively preparing for its chapter 11 filing. Around that time, Celsius formed a special committee of disinterested directors newly vested with decision-making authority. *See Declaration of Alex Mashinsky, Chief Executive Officer of Celsius Network LLC, in Support of Chapter 11 Petitions and First Day Motions* [No. 22-10964-mg, ECF No. 23]. Celsius and its affiliates subsequently filed voluntary petitions with the Court on July 13, 2022. These chapter 11 cases have been extraordinarily complex and demanded Celsius' full attention.[13] In addition to the fact that the Debtors' workforce is lean and was tasked with multitasking to run the business and assist with the restructuring, the Debtors also experienced a significant turnover in Celsius personnel, including senior management. *See Debtors' Motion Granting a Second Extension of Time to File Schedules and Statements of Financial Affairs* [No. 22-10964-mg, ECF No. 431].

---

[13] For example, Celsius sought and received three separate extensions to file its schedules of assets and liabilities, schedules of current income and expenditures, schedules of executory contracts and unexpired leases, and statements of financial affairs (*see* No. 22-10964-mg, ECF Nos. 8, 431, and 833), and on October 5, 2022, after spending countless hours assembling and organizing the required information, Celsius filed those documents totaling 1,384 pages. *See* No. 22-10964-mg, ECF No. 974.

9

Celsius also believed (and believes) that Defendants already were barred from engaging in further transfers of its property by the automatic stay. Indeed, Plaintiffs told Defendants as much in a letter on September 13, 2022. *See* Hurley Decl, Ex. 42. Defendants' refusal to forbear from such conduct reignited Celsius' concerns that Court intervention could be necessary. In the interim, Defendants filed two motions to dismiss, to which Celsius has had to respond. *See Env't Servs., Inc. v. Recycle Green Servs., Inc.*, 7 F. Supp. 3d 260, 280 (2014) (noting that a delay was "excusable because the delay was caused, in part, by having to respond to two motions to dismiss"); *Marks*, 784 F. Supp. 2d at 333 (same). In short, Celsius did not sit idly on its rights, as the Defendants suggest in their Opposition. In any event, Defendants should not be allowed to use delay as an excuse to further dissipate Celsius' assets and punish Celsius' creditors.

### III. The Equities Counsel in Favor of an Injunction Because Defendants Seek to Dispose of the Exact Property Subject to Equitable Claims

Finally, Defendants argue that the equities do not counsel in favor of a prejudgment attachment of KeyFi's assets because much of the relief requested is redundant of the automatic stay. As noted, however, that is exactly what Celsius argued in September when it asked Defendants to confirm they would adhere to the relief later sought by the Motion, and Defendants refused. And now, despite the automatic stay, Defendants expressly contend that they will dissipate Celsius' Property unless an injunction is entered. Neither Celsius nor the Court can ignore that threat, and an injunction should be entered preserving the Property so that it will be available for the benefit of Celsius' creditors when this litigation is concluded.

### CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court grant Plaintiffs' Motion for Preliminary Injunction in its entirety and grant such other and further relief as the Court deems just and proper.

10

Dated: December 5, 2022
      New York, New York

                        AKIN, GUMP, STRAUSS, HAUER & FELD LLP

                        By:   */s/ Mitchell P. Hurley*
                              Mitchell P. Hurley
                              Dean L. Chapman Jr.
                              One Bryant Park
                              New York, New York 10036
                              Telephone: (212) 872-1000
                              Facsimile: (212) 872-1001
                              mhurley@akingump.com
                              dchapman@akingump.com

                              Elizabeth D. Scott (admitted *pro hac vice*)
                              2300 N. Field Street, Suite 1800
                              Dallas, TX 75201
                              Telephone: (214) 969-2800
                              Facsimile: (214) 969-4343
                              edscott@akingump.com

                              *Special Litigation Counsel for Debtors and Plaintiffs Celsius Network Limited and Celsius KeyFi LLC*