**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>CELSIUS NETWORK LLC, *et al.*,[1]<br><br>                Debtors. | Chapter 11<br><br>Case No. 22-10964 (MG) |
| CELSIUS NETWORK LIMITED and<br>CELSIUS KEYFI LLC,<br><br>              Plaintiffs,<br><br>              v.<br><br>JASON STONE and KEYFI INC.,<br><br>              Defendants. | Adv. Proc. No. 22-01139 (MG)<br><br>**AMENDED JOINT PRETRIAL ORDER** |

The parties having conferred among themselves and with the Court pursuant to Fed. R. Civ. P. 16, the following statements, directions and agreements are adopted as the Pretrial Order herein.

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Celsius Network LLC (2148); Celsius KeyFi LLC (4414); Celsius Lending LLC (8417); Celsius Mining LLC (1387); Celsius Network Inc. (1219); Celsius Network Limited (8554); Celsius Networks Lending LLC (3390); and Celsius US Holding LLC (7956).  The location of Debtor Celsius Network LLC's principal place of business and the Debtors' service address in these chapter 11 cases is 121 River Street, PH05, Hoboken, New Jersey 07030.

# TABLE OF CONTENTS

I.  NATURE OF THE CASE ................................................................................................. 1

II. BASIS FOR JURISDICTION, WHETHER THE CASE IS CORE OR NON-CORE, AND
    WHETHER THE BANKRUPTCY JUDGE MAY ENTER FINAL ORDERS OR
    JUDGMENT ................................................................................................................... 3

III. STIPULATED FACTS .................................................................................................... 4

   A.  The Parties .................................................................................................................. 5

   B.  Background ................................................................................................................. 5

   C.  Certain Agreements .................................................................................................... 6

   D.  Certain Transfers ........................................................................................................ 8

   E.  Tornado Cash ............................................................................................................ 12

   F.  The Celsius Bankruptcy ........................................................................................... 15

IV. PARTIES' CONTENTIONS .......................................................................................... 15

   A.  Plaintiffs' Contentions ............................................................................................. 15

   B.  Defendants' Contentions .......................................................................................... 16

V.  ISSUES TO BE TRIED ................................................................................................. 16

VI. PLAINTIFFS' EXHIBITS ............................................................................................. 16

VII. DEFENDANTS' EXHIBITS ......................................................................................... 17

VIII. STIPULATIONS AND OBJECTIONS WITH RESPECT TO EXHIBITS ...................... 17

IX. PLAINTIFFS' WITNESS LIST .................................................................................... 17

X.  DEFENDANTS' WITNESS LIST ................................................................................. 18

XI. RELIEF SOUGHT ........................................................................................................ 19

I.       NATURE OF THE CASE

Plaintiffs Celsius Network Limited ("CNL") and Celsius KeyFi LLC ("Celsius KeyFi," and together with CNL, "Celsius") commenced the above-captioned adversary proceeding (the "Adversary Proceeding") against Defendants Jason Stone and KeyFi, Inc. ("KeyFi," and together with Stone, "Defendants").   In its amended complaint dated October 13, 2022 ("Amended Complaint"), Celsius alleges claims for turnover, conversion, fraudulent misrepresentation, breach of fiduciary duty, unjust enrichment, replevin, and accounting arising out of or relating to certain digital assets Celsius deposited in wallets accessible to Stone and KeyFi (the "Celsius Wallets") to permit Defendants to deploy those coins in authorized staking and decentralized finance activities.   On October 27, 2022, Defendants moved to dismiss all claims alleged in the Amended Complaint except for Celsius' claim for breach of fiduciary duty (the "Motion to Dismiss").   On December 8, 2022, the Court denied the Motion to Dismiss.   On December 22, 2022, Defendants answered the Amended Complaint, denying the allegations in material part and asserting seven affirmative defenses.

On November 14, 2022, Celsius moved for a preliminary injunction as set forth in the *Motion* [ECF No. 20] *Memorandum in Support of Motion for Preliminary Injunction* [ECF No. 21] (together, the "Motion") seeking an order:

(i)      Restraining the Defendants, their officers, agents, servants, employees, attorneys, and any other persons who are in active concert or participation with them (collectively the "Stone Parties" or "Defendant Parties") from:

   a.   accessing, transferring, or otherwise disposing of the Celsius Staked ETH,[2]

   b.   accessing for any reason any Celsius Wallets,

---

[2]   "Celsius Staked ETH" refers to the 24,960 Ethereum coins ("ETH") transferred from the Celsius Wallet with the address 0xb1adceddb2941033a090dd166a462fe1c2029484 through a smart contract with the address 0x39dc6a99209b5e6b81dc8540c86ff10981ebda29 and deposited to the Ethereum staking deposit smart contract with the address 0x00000000219ab540356cBB839Cbe05303d7705Fa and all interest or other rewards earned thereon.

  c. transferring or otherwise disposing of the Property[3] that they took from Celsius, and

  d. using Tornado Cash[4] or other means to conceal the location of property that could otherwise be available to satisfy a judgment in this case; and

(ii) Requiring the Stone Parties to:

  a. within five (5) calendar days of the date on which the injunction is granted, specifically identify, under penalty of perjury, all Property and its current location(s), and

  b. within 24 hours of the granting of the injunction, relinquish the private keys associated with any and all Celsius Wallets and with the Celsius Staked ETH.

On November 23, 2022, the United States Bankruptcy Court for the Southern District of New York (the "Court") conducted a Case Management Conference during which it scheduled a hearing on Plaintiffs' Motion for January 11, 2023 and, if necessary, January 12, 2023 (the "Preliminary Injunction Trial"), and set intervening deadlines for any expedited discovery related to the Motion.

On December 16, 2022, the Court entered the *Joint Stipulation and Agreed Order Between Plaintiffs Celsius Network Limited and Celsius KeyFi LLC and Defendants Jason Stone and KeyFi Inc.* [ECF No. 52] (the "Joint Stipulation"), under which the parties stipulated to (and the Court ordered) certain of the relief sought by Celsius in the Motion. Under the Joint Stipulation the Defendant Parties are restrained and enjoined from:

  a. accessing, transferring, or otherwise disposing of the Celsius Staked ETH;

  b. accessing for any reason any Celsius Wallets.

Joint Stip. ¶ 1.

---

[3] "Stone Utilized Assets" refers to any assets transferred or otherwise used by, or at the direction of, the Defendants from any Celsius Wallet. "Subject Property" refers to non-fungible tokens ("NFTs"), interests in blockchain related companies, and any other property of any kind acquired in whole or in part with Stone Utilized Assets or their proceeds. "Property" refers collectively to the Stone Utilized Assets and the Subject Property.

[4] "Tornado Cash" refers to the virtual currency mixer sanctioned by the U.S. Department of the Treasury's Office of Foreign Assets Control (OFAC) on August 8, 2022.

The Joint Stipulation further provided that Defendants were required, "before 12:00 p.m. Eastern Time on December 20, 2022, to provide a sworn statement specifically identifying, under penalty of perjury, all Property, including all Stone Utilized Assets and all Subject Property, and its current location(s)." *Id.* ¶ 2.

The Defendant Parties were further required to provide Plaintiffs "any and all documents containing the seed phrases and private keys associated with any and all Celsius Wallets and with the Celsius Staked ETH (or containing hints or other similar information usable to recall or determine such seed phases and private keys) currently in the Defendant Parties' possession, custody or control and that they are aware of following a reasonable inquiry (collectively, the "Seed and Key Documents"), and immediately thereafter shall destroy any copies of the Seed and Key Documents in any of the Defendant Parties' possession, custody, or control." *Id.* ¶ 3. Defendants complied with this obligation.

The parties expressly reserved for determination by the Court all aspects of the Motion not specifically resolved by the Joint Stipulation, including Celsius' requests to restrain and enjoin the Defendant Parties during the pendency of this adversary proceeding from (i) transferring or otherwise disposing of any Property, including any Stone Utilized Assets and any Subject Property, or (ii) using Tornado Cash or any other means to conceal the location of property that could otherwise be available to satisfy a judgment in this case. *Id.* ¶ 4.

## II.      BASIS FOR JURISDICTION, WHETHER THE CASE IS CORE OR NON-CORE, AND WHETHER THE BANKRUPTCY JUDGE MAY ENTER FINAL ORDERS OR JUDGMENT

The Court has subject matter jurisdiction over the Adversary Proceeding pursuant to 28 U.S.C. §§ 157 and 1334 and the Standing Order of the United States District Court for the Southern District of New York (the "Southern District of New York") referring to the Bankruptcy Judges of the Southern District of New York all cases and proceedings arising under title 11 of the United

States Code (the "Bankruptcy Code"). Federal subject matter jurisdiction also exists under 28 U.S.C. § 1332(a) based on complete diversity of citizenship of the parties and because the amount in controversy, exclusive of interest and costs, exceeds $75,000, and under 28 U.S.C. § 1331.

Venue in the Southern District of New York is proper under 28 U.S.C. §§ 1408 and 1409 because this Adversary Proceeding arises under and in connection with cases commenced under the Bankruptcy Code, and pursuant to 28 U.S.C. § 1391 because all Defendants are residents of New York state. Furthermore, a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in this judicial district.

The parties agree that this Adversary Proceeding includes at least one "core" claim: turnover under section 542 of the Bankruptcy Code as it seeks to prevent the dissipation of estate property. Analysis of whether other claims in the Adversary Proceeding are, or are not, core is unnecessary in connection with the Motion.

The Court may enter final orders and judgments with respect to the core claims and to prevent the unlawful dissipation of estate property. The instant Motion, however, requests only interlocutory relief, which the Court may grant independent of the core nature of claims asserted in the Amended Complaint.

If it is determined that this Court, absent consent of the parties, cannot enter final orders or judgments with respect to the issues to be decided in the relief sought in the Motion consistent with Article III of the United States Constitution, Plaintiffs and Defendants consent to entry of final orders and judgments by this Court with respect to the relief sought in the Motion.

## III.    STIPULATED FACTS

The parties admit, stipulate, and agree that:

**A.  The Parties**

1.      Prior to declaring for bankruptcy, Celsius was one of the largest cryptocurrency based finance platforms in the world and it provided financial services to institutional, corporate and retail clients.

2.      Defendant KeyFi is a Delaware corporation.  At all relevant times, Defendant Stone was the CEO and maintained operational control of Defendant KeyFi.  Defendant also formerly was the CEO of plaintiff Celsius KeyFi.

**B.  Background**

3.      Staking refers to providing cryptocurrency coins, like ETH, to a third-party platform for the purpose of earning revenue, usually in the form of a coin.  DeFi generally refers to certain activities on a blockchain designed to provide financial services like borrowing, lending and market-making without an institutional intermediary, often utilizing so-called "smart contracts."

4.      In August 2020, CNL and the Defendants agreed in principle that CNL would set up a wholly owned subsidiary to acquire the assets of KeyFi and operate CNL's staking and DeFi activities, with Stone as CEO of that subsidiary.

5.      Beginning in or around August 2020, CNL regularly funded coins into certain "wallets" accessible to Stone ("Celsius Wallets").  A wallet is a term used to describe an address on the blockchain through which an individual or entity is able to send and receive crypto through the address.

6.      On or around August 19, 2020, CNL created a Celsius Wallet with the address 0xb1adceddb2941033a090dd166a462fe1c2029484 (the "0xb1 Wallet") and transferred 1 ETH to the 0xb1 Wallet.  From time-to-time thereafter, CNL transferred additional digital assets into the

0xb1 Wallet.  CNL provided to Defendants the private keys to the 0xb1 Wallet and certain other Celsius-created wallets (together with the 0xb1 wallet, the "Wallets") to permit Defendants to deploy Celsius' coins solely in authorized DeFi and staking activities.  The private key to a digital wallet is similar to a password for a conventional bank account, but the private key can never be changed.  Once a party has the private key, he, she or it will be able to access the associated wallet permanently.

7.      On or around January 11, 2021 Celsius US Holdings LLC, Celsius KeyFi and Defendant Stone signed a limited liability company agreement for Celsius KeyFI (the "LLC Agreement") dated October 5, 2020.  Defendant KeyFi and Plaintiffs CNL and Celsius KeyFi also signed an Asset Purchase Agreement on January 11, 2021 (the "APA").  Plaintiff CNL and Plaintiff Celsius KeyFi also entered into a service agreement on January 11, 2021 (the "Service Agreement").

**C. Certain Agreements**

8.      Defendant KeyFi and Plaintiff CNL entered into a Memorandum of Understanding dated October 1, 2020 (the "MOU") on or around October 1, 2020.  A true and correct copy of the MOU is offered without objection as Exhibit PX037.

9.      Defendant KeyFi and Plaintiff CNL entered into a service agreement dated October 7, 2020 (the "Old Services Agreement") on or around October 7, 2020.  A true and correct copy of the Original Services Agreement is offered without objection as Exhibit PX039.

10.     Defendant KeyFi and Plaintiffs CNL and Celsius KeyFi entered into an Asset Purchase Agreement dated December 31, 2020 on or around January 11, 2021 (the "APA").  A true and correct copy of the APA is offered without objection as Exhibit PX040.

11.     Plaintiff CNL and Plaintiff Celsius KeyFi entered into a Services Agreement dated December 31, 2020 on or around January 11, 2021 (the "Services Agreement").  A true and correct copy of the Services Agreement is offered without objection as Exhibit PX041.

12.     Defendant Stone, Plaintiff Celsius KeyFi and non-party Celsius US Holding LLC entered into a Limited Liability Company Agreement of Celsius KeyFi LLC dated October 5, 2020 on or around January 11, 2021 (the "Celsius KeyFi LLC Agreement" and together with the MOU, the Old Services Agreement, the APA and the Services Agreement, the "Agreements").  A true and correct copy of the Celsius KeyFi LLC Agreement is offered without objection as Exhibit PX038.

13.     The parties reserve all of their respective rights, remedies, claims, arguments and defenses relating to the Agreements, including regarding the validity, enforceability and construction of the Agreements.

14.     The APA also contemplated that Defendant KeyFi would be entitled to an "Earnout Payment (as defined in the Service Agreement Key Terms) in accordance with the terms of the Service Agreement." APA at 6. The Service Agreement Key Terms further state that "the first payout date will be 12/31/2020, and subsequent ones will be on the 15th of each month." APA at Sched. 7.8(b)(6)(d).[5]

15.     Prior to Stone's departure from Celsius KeyFi, no formal calculation of profits or losses was ever made. Defendants contend that profits were earned and that Alex Mashinsky authorized advances on those alleged profits. Plaintiffs dispute that profits were earned or that such authorization took place.

---

[5]     At Defendants' request, the Parties have included paragraph 14, but Plaintiffs do not accept Defendants' characterization of the documents at issue and respectfully refer the Court to true and correct copies of the documents, which have been submitted as Plaintiffs' Exhibits 40 and 41.

D.        **Certain Transfers**

16.        From January 23, 2021 to February 22, 2021, Defendants used assets from the 0xb1

Wallet to buy a series of NFTs called "Cryptopunks," eventually buying fifteen Cryptopunks with

more than 600 ETH.  Defendants caused the 0xb1 Wallet to purchase the following Cryptopunks

at the following prices, on the following dates (the "15 Cryptopunks"):

| Cryptropunk Number | Purchase Price (ETH) | Purchase Date |
|---|---|---|
| 8724 | 10.00 | 2/1/2021 |
| 3793 | 8.80 | 2/3/2021 |
| 7844 | 15.00 | 2/8/2021 |
| 4975 | 7.00 | 2/8/2021 |
| 638 | 20.00 | 2/8/2021 |
| 8777 | 6.25 | 2/8/2021 |
| 5287 | 7.89 | 2/8/2021 |
| 8472 | 130.00 | 2/11/2021 |
| 6784 | 130.00 | 2/11/2021 |
| 3489 | 130.00 | 2/11/2021 |
| 6124 | 6.99 | 2/13/2021 |
| 4181 | 18.00 | 2/17/2021 |
| 4347 | 45.00 | 2/21/2021 |
| 9934 | 55.00 | 2/22/2021 |
| 7076 | 59.00 | 2/22/2021 |

17.        As one example of the above, on February 11, 2021, the 0xb1 Wallet sent 130 ETH

to  the  smart  contract  that  controls  the  Cryptopunks  NFT  series  (address

0xb47e3cd837ddf8e4c57f05d70ab865de6e193bbb)  to  purchase  a  Cryptopunks  NFT  3489.  In

exchange,  a  Cryptopunk  NFT  was  transferred  from  the  seller's  address,

0xe83c750b2708320bb134796c555b80df39a3d97b, to 0xb1.  This transaction is identifiable on

the blockchain by its "transaction hash" (or "txn hash") which is a unique 66-character identifier

that is generated whenever a transaction on the blockchain is created. The transaction hash for this

specific          purchase          is          0xa28c464f931c9fba7ef090f27ca0ddd
b6bf0137b0400745f51c0aaf3d4e82dd3.

18.     At least four of the transferred Cryptopunks were subsequently sold from the
0x50dd Wallet.  Specifically, on April 5, 2021, Defendants listed Cryptopunk 6124 for sale, and it
was sold on April 8 for 19 ETH (worth around $39,273 at the time).  On April 10, 2021, Defendants
listed Cryptopunk 638 for sale, and it was sold on the same day for 130 ETH (worth around
$277,363 at the time).  A few months later, on July 30, 2021, Defendants listed Cryptopunk 8472
for sale.  This Cryptopunk was sold the same day for the listed price of 700 ETH (worth more than
$1.7 million at the time).  On August 24, 2021, Defendants listed Cryptopunk 4347 for sale, and it
was sold on August 29, 2021 for 222 ETH  (worth more than $703,000 at the time.  In total, the
four Cryptopunks were sold for 1,071 ETH, which was worth around $2.7 million as of the dates
of the sales, and worth about $1.3 million at recent ETH prices.

19.     On February 19, 2021, Defendants transferred 300 ETH from the 0xb1 Wallet to
0x1cEb38874B44E2B3a87B2d1204BC2b989529Ed14, an external wallet that Defendants own or
control (the "0x1c Wallet").  Later on February 19, 2021, the 0x1c Wallet purchased dozens of
NFTs, including "Bullrun Babes."  The blockchain shows that the 0x1c Wallet engaged in at least
87 purchases of Bullrun Babes on February 19.  Those purchases were made using assets
transferred from the 0xb1 Wallet to the 0x1c Wallet.

20.     PX0016 sets forth the relevant details of the transactions of the 0x1c Wallet
involving the Bullrun Babes NFTs, beginning on February 19.  To help the Court understand the
details contained on this spreadsheet, it would be helpful to consider an example.  The purchase
from the 0x1c Wallet set forth on row 17 of the spreadsheet can be identified with the transaction
hash   of   0x583d2b2432686699e7f9dc4dad5a2b7aa34a36e369a0fad0f998f271f58c3c47   (the

"0x583" transaction).  The details of the 0x583 transaction, which are visible on the blockchain through Etherscan and attached as PX0017, show that a sale of an NFT occurred on OpenSea, which is the largest online marketplace for NFTs.  The controller of the 0x1c Wallet initiated a smart contract that triggered the transfer of 3.135 ETH to a wallet with the address of 0xba11610e28406a4cd34d9e993edd9e7f2ea90d53.  In return, a "BullrunBabes" token (which refers to a Bullrun Babes NFT) was transferred from 0xba11610e28406a4cd34d9e993edd9e7f2ea90d53 to the 0x1c Wallet.

21.     On February 27, 2021, Defendants transferred another 150 ETH from the 0xb1 Wallet to Defendants' 0x1c Wallet.  The 0x1c Wallet subsequently purchased more Bullrun Babes.  For example, the blockchain shows that on March 3, 2021, the 0x1c Wallet sent 1.9 ETH to 0x56d77f1a33ed49a82b4960a10435cdd5d2652340 in exchange for a Bullrun Babes NFT through OpenSea. See PX0019 (Transaction Details of March 3 Bullrun Babes Purchase).  The transaction hash for that particular transaction is 0x7aa7949bd58a977ffcfe064c3a32880e9a7700e68b698f2773eacd3b20d14d85.  The 0x1c Wallet made 6 purchases of Bullrun Babes on March 3, including the purchase just described.  On March 19, the 0x1c wallet proceeded to transfer 67 Bullrun Babes to a wallet with the address of 0xe25c8cbe119c55dcef5ea372771f9365f52a115d (the "0xe25 Wallet"), which is controlled by Defendants.

22.     In addition to the purchases and transfers of Cryptopunks and Bullrun Babes described above, the 0xb1 Wallet purchased hundreds of other NFTs.

23.     On March 19, 2021, the 0x1c Wallet initiated two separate transfers of ETH—a transfer of 1 ETH and 29 ETH—to the 0xe25 Wallet.  On March 20, 2021, the 0x1c Wallet transferred another 15 ETH to the 0xe25 Wallet, and on April 7, 2021, another 10.29 ETH to the

0xe25 Wallet.  Separately, on March 10, 2021, the 0xb1 Wallet transferred 20 ETH to a wallet

with the address 0x50dd57f50a17d57304e7a4f262da30beb31c2e87 (the "0x50dd Wallet"), a

wallet that Defendants own or control.

24.    Beginning on March 16, 2021, Defendants caused the 0xb1 Wallet to transfer the

15 Cryptopunks, along with two additional Cryptopunks (#970 and #864), to the 0x50dd Wallet.

The chart below summarizes the transfer dates for these 17 Cryptopunks from the 0xb1 Wallet to

the 0x50dd Wallet:

| Cryptopunk Number | Transfer Date |
|---|---|
| 8724 | 3/16/2021 |
| 3793 | 3/16/2021 |
| 7844 | 3/16/2021 |
| 4975 | 3/16/2021 |
| 638 | 3/16/2021 |
| 8777 | 3/16/2021 |
| 6124 | 3/16/2021 |
| 4181 | 3/16/2021 |
| 4347 | 3/16/2021 |
| 9934 | 3/16/2021 |
| 7076 | 3/16/2021 |
| 864 | 3/16/2021 |
| 970 | 3/16/2021 |
| 5287 | 3/17/2021 |
| 8472 | 5/3/2021 |
| 6784 | 5/3/2021 |
| 3489 | 5/3/2021 |

25.    In or around March 23, 2021, Defendants advise that they caused Celsius KeyFi to

borrow $600,000 worth of the stable coin USDC using property belonging to Celsius KeyFi as

collateral for the loan.  Defendants then transferred the $600,000 worth of USDC to Nifty's in

exchange for equity interests in "Nifty's."  Initially, the Nifty's interests were held by a company

wholly owned by Defendant Stone called Home of Alpha, but were later transferred to Defendant Stone personally. Those interests currently are held in Defendant Stone's name.

26. Defendants caused additional assets to be transferred from Celsius Wallets to wallets owned or controlled by Defendants, or otherwise to or for the benefit of Defendants, and made additional purchases using assets in or transferred from Celsius Wallets.

**E. Tornado Cash**

27. Defendants used an application called Tornado Cash, a privacy protocol "mixer" that masks the path of ETH that is transferred from a sender to a receiver on the blockchain. Among other things, a user can deposit ETH to Tornado Cash and then withdraw the ETH through a wallet with a different public key, or address, thus obscuring the final destination of the transaction on the blockchain. On August 8, 2022, the U.S. Department of Treasury announced that OFAC has placed Tornado Cash on its SDN List, and that "all transactions by U.S. persons or within (or transiting) the United States" with Tornado Cash are prohibited. On September 8, 2022, the U.S. crypto-asset exchange Coinbase announced that it was funding a lawsuit to challenge the Department of Treasury's addition of Tornado Cash to the SDN List.

28. On May 23, 2021, the 0x50dd Wallet—controlled by Defendants—made a transfer of 100 ETH to the Tornado Cash smart contract address. Also on May 23, a transfer from a wallet with the address of 0xfc2a616d48a8681250aaaf590404e20812e96cfa (the "0xfc2 Wallet")—also controlled by Stone—made a transfer of 100 ETH to Tornado Cash. Defendants initially funded the 0xfc2 Wallet with a transfer of 200 ETH from the 0xb1 Wallet on February 19, 2021. Subsequently, Defendants made purchases of various NFTs, including purchases of various Cryptopunks that had been collected using funds from the 0xb1 Wallet.

29.    Other transfers to Tornado Cash include, but are not necessarily limited to: (1) a transfer of 100 ETH on May 25, 2021 from the 0xfc2 Wallet to Tornado Cash; (2) two separate transfers of 10 ETH from the 0x50dd Wallet to Tornado Cash on May 25, 2021 (3) two separate transfers of 100 ETH from the 0x50dd Wallet to Tornado Cash on October 12, 2021; and (4) nearly three dozen additional, separate transfers of 10 ETH from the 0xfc2 and 0x50dd Wallet between November 2021 and January 2022.

30.    On September 17, 2021, an airdrop of approximately 1.4 million DAI, a cryptocurrency pegged to the value of the U.S. dollar, was made to the 0xb1 Wallet.  Any party on the blockchain can freely airdrop items to a wallet without notice to or permission from the wallet owner.  On September 21, 2021, Stone transferred the 1.4 million DAI out of the 0xb1 Wallet to a wallet with public key 0x8cc24e59e29a0f9b46f1746b392eaf2483d75096 (the "0x8cc Wallet"), which Defendants own or control.  Defendants did not notify Celsius of the 1.4 million DAI transfer, before or after Defendants transferred that DAI to their wallets.  Through three different transactions, Defendants sold the 1.4 million DAI in exchange for approximately 485 ETH, which then was worth approximately $1.4 million.  Then, in 17 separate transfers beginning on September 22, 2021 and concluding on October 12, 2021, Stone caused the transfer of a total of 485 ETH to Tornado Cash.

31.    Between October and December 2021, the $1.4 million worth of ETH was withdrawn from Tornado Cash to multiple different wallets.  Defendants advise that approximately half was withdrawn to a wallet or wallets belonging to Defendant Stone.  Defendants advise that the other approximately half of the $1.4 million worth of ETH was withdrawn by Dennis Reichelt, Lukasz Krol and Maciej Zaleski, whom Defendants represent are cofounders of Defendant KeyFi.

32.     During the fall of 2020, Celsius personnel, sometimes including Alex Mashinsky and Defendant Stone, engaged in meetings to discuss Defendants' deployment of Celsius' coins. At these meetings Stone represented that the Defendants' deployments of Celsius' coins for authorized staking and DeFi activities were profitable.  Plaintiffs did not dispute the profitability of Defendants' activities until after they came to believe that the Defendants' activities resulted in losses rather than profits.

33.     In early 2021, Celsius instructed Defendants to return all Celsius digital assets in Defendants' possession, custody or control.  The Defendants agreed but contend they retained what they were authorized to take as advances on alleged profit share.  Plaintiffs dispute that profits were earned, and dispute that Defendants ever were authorized to take assets as advances on profit share or otherwise.

34.     By email dated March 9, 2021, Stone notified Celsius that he was planning to start his own investment management company, which he said he had named "0x Management."  Stone contends that the March 9 email constituted notice to Celsius of his resignation as CEO of Celsius KeyFi.

35.     On March 26, 2021, Celsius' Roni Pavon emailed Defendant Stone, enclosing a letter from Alex Mashinsky and Daniel Leon and a document entitled Written Consent in Lieu of Meeting of the Board of Managers of Celsius KeyFi LLC dated March 26, 2021.  The March 26, 2021 email, letter and Written Consent are submitted without objection as Exhibit PX043.

36.     After Celsius reiterated its demand for return of all assets in March 2021, counsel for the Parties exchanged numerous emails and letters.  Defendants initially were represented by Kaiser Saurborn & Mair ("Kaiser Saurborn").  Kaiser Saurborn was replaced by Quinn Emmanuel Urquhart & Sullivan, LLP ("Quinn Emmanuel"), who first contacted Celsius counsel for the first

time in June, 2021.  Thereafter, Quinn Emmanuel was replaced by Roche Freedman LLP ("Roche Freedman"), who first contacted Celsius through its counsel on or around September 1, 2021. Defendants are currently represented by Kyle Roche PA and Freedman Normand Friedland LLP.

37.    In their September 1, 2021 correspondence, through Roche Freedman, Defendants asked Celsius to enter into a Standstill and Tolling Agreement ("Standstill Agreement"), and to engage in mediation in an effort to reach a settlement.  Celsius agreed, and the Parties signed the Standstill Agreement on October 27, 2021.  Following formal mediation in December 2021, the parties' settlement discussions continued for an extended period of time, and the Standstill Agreement was extended multiple times through June 24, 2022, just weeks before Celsius' bankruptcy filing.  Ultimately, the parties did not reach agreement.

### F.  The Celsius Bankruptcy

38.    On July 13, 2022, Celsius Network LLC and certain of its affiliates filed voluntary petitions for relief under Chapter 11.

### IV.    PARTIES' CONTENTIONS

For purposes of the Preliminary Injunction Trial, except as set forth herein, the pleadings are deemed amended to embrace the following, and only the following, contentions of the parties:[6]

### A.  Plaintiffs' Contentions

1.    Plaintiffs' contentions as to the ultimate issues of fact and law to be tried at the Preliminary Injunction Trial are set forth in Plaintiffs' Motion, *Plaintiffs' Reply Memorandum in Support of Motion for Preliminary Injunction* [ECF No. 42] ("Reply"), and the declarations made in support of Plaintiffs' Motion and Reply.

---

[6]    The parties reserve all rights to raise any issue not addressed at the Preliminary Injunction Trial following the Preliminary Injunction Trial.

### B. Defendants' Contentions

1.      Defendants' contentions as to the ultimate issues of fact and law to be tried at the Preliminary Injunction Trial are set forth in Defendants' Opposition to the Motion for Preliminary Injunction [ECF No. 31] ("Opposition"), and the declarations made in support of Defendants' Opposition.

### V.      ISSUES TO BE TRIED

The parties respectfully refer to and incorporate their pre-trial legal submissions, as well as the *Joint Stipulation and Agreed Order Between Plaintiffs Celsius Network Limited and Celsius KeyFi LLC and Defendants Jason Stone and KeyFi Inc.* [ECF No. 52].  Without waiver of such submissions and to summarize, the parties identify the following issues to be tried at the Preliminary Injunction Trial:

1) Whether the automatic stay bars Defendants from (i) transferring or otherwise disposing of any Property, including any Stone Utilized Assets and any Subject Property, or (ii) concealing the location of property that could otherwise be available to satisfy a judgment in this case, including by use of Tornado Cash or any other "mixer" or similar such application; or

2) In the alternative, whether:

   a.      one or more of Plaintiffs' claims, which include claims for turnover, conversion, fraudulent misrepresentation, breach of fiduciary duty, unjust enrichment, replevin, and accounting, is sufficiently meritorious to justify entry of an injunction;

   b.      Plaintiffs are likely to suffer irreparable harm if the Court does not restrain and enjoin the Defendant Parties from (i) transferring or otherwise disposing of any Property, including any Stone Utilized Assets and any Subject Property, or (ii) concealing the location of property that could otherwise be available to satisfy a judgment in this case, including by use of Tornado Cash or any other "mixer" or similar such application;

   c.      the balance of equities between the parties favors the entry of an injunction; and

   d.      the public interest weighs in favor of an injunction.

### VI.      PLAINTIFFS' EXHIBITS

Plaintiffs' Exhibits, and Defendants' objections thereto, are set forth in Exhibit A.

## VII.    DEFENDANTS' EXHIBITS

Defendants' Exhibits, and Plaintiffs' objections thereto, are set forth in Exhibit B.

\*      \*      \*

No exhibit not listed by Plaintiffs or Defendants may be used at trial except (a) for cross-examination purposes or (b) if good cause for its exclusion from the pretrial order is shown.  Each side shall list all exhibits it intends to offer on its case in chief.  The list shall include a description of each exhibit.

All exhibits shall be pre-marked with each exhibit bearing a unique number or letter (numbers for Plaintiffs and letters for Defendants), with the prefix PX for Plaintiffs' exhibits and DX for Defendants' exhibits.

Two copies of each exhibit shall be delivered to chambers with the proposed pretrial conference order.

## VIII.    STIPULATIONS AND OBJECTIONS WITH RESPECT TO EXHIBITS

Any objections not set forth herein will be considered waived absent good cause shown. Plaintiffs' objections to Defendants' Exhibits are set forth in Exhibit B hereto.  Defendants' objections to Plaintiffs' Exhibits are set forth in Exhibit A hereto.

Except to the extent objections are raised in the attached Exhibits or below, the parties stipulate to the admissibility of all designated deposition testimony (as discussed below) and all documents produced by parties or third parties in this litigation that are identified on the parties' exhibit lists.

## IX.    PLAINTIFFS' WITNESS LIST

Plaintiffs intend to submit the testimony of the following witnesses by declaration at the Preliminary Injunction Trial:

a.      Patrick Holert[7]

b.      Alex Mashinksy

The Declarations that each of Messrs Holert and Mashinsky submitted in support of Plaintiffs' Motion, together with all exhibits thereto, will serve as their direct testimony in this matter.[8]

## X.      DEFENDANTS' WITNESS LIST

Defendants intend to submit the testimony of the following witness by declaration at the Preliminary Injunction Trial:

a.      Jason Stone[9]

Defendants intend to call the following witness in their case in chief at the Preliminary Injunction Trial:

a.      Connor Nolan

\*      \*      \*

No witness not identified herein shall be permitted to testify on either party's case in chief absent good cause shown.

---

[7]      Defendants object to the admissibility of the following portions of the Affidavits of Patrick Holert [ECF Nos. 25 and 45]:

- ¶ 5 of ECF No. 25: FRE 802
- ¶¶ 4-5 of ECF No. 45; FRE 802

[8]      True and correct copies of Mr. Holert's declarations are offered as PX053 and PX060.  A true and correct copy of Mr. Mashinsky's declaration is offered as PX059.

[9]      Plaintiffs object to the admissibility of the following portions of the *Affidavit of Jason Stone in Support of Defendants' Opposition to Plaintiffs' Motion for Preliminary Injunction* [ECF No. 33] ("Stone Affidavit"):

- ¶¶ 18–21:  FRE 401, 403, 602.
- ¶ 29:  FRE 602.
- ¶ 32–33:  FRE 802, if offered for the truth of the matter asserted.

## XI.    RELIEF SOUGHT

At the Preliminary Injunction Trial, Plaintiffs respectfully request that the Court retrain and

enjoin the Defendants from:

(i)    transferring or otherwise disposing of any Property, including any Stone Utilized
Assets and any Subject Property; or

(ii)    concealing the location of property that could otherwise be available to satisfy a
judgment in this case, including by use of Tornado Cash or any other "mixer" or similar
such application.

Dated: January 6, 2023

| | |
|---|---|
| */s/ Mitchell P. Hurley* | */s/ Kyle Roche* |
| AKIN GUMP STRAUSS HAUER & FELD LLP | KYLE ROCHE P.A. |
| Mitchell P. Hurley | Kyle W. Roche |
| Dean L. Chapman Jr. | 260 Madison Ave., FL 8 |
| One Bryant Park | New York, New York 10016 |
| New York, New York 10036 | Email: kyle@kyleroche.law |
| Telephone: (212) 872-1000 | |
| Facsimile: (212) 872-1002 | *Counsel to Jason Stone and KeyFi* |
| Email: mhurley@akingump.com | *Inc.* |
| dchapman@akingump.com | |

– and –

Elizabeth D. Scott (admitted *pro hac vice*)
2300 N. Field Street, Suite 1800
Dallas, Texas 75201
Telephone: (214) 969-2800
Facsimile: (214) 969-4343
Email: edscott@akingump.com.com

*Special Litigation Counsel*
*for Debtors and Plaintiffs*
*Celsius Network Limited and*
*Celsius KeyFi LLC*

**IT IS SO ORDERED:**

Dated:  January 9, 2023
           New York, New York

                    **/s/ Martin Glenn**
                    MARTIN GLENN
           Chief United States Bankruptcy Judge

## **Exhibit A**

Plaintiffs' Exhibit List

| PX No. | Date | Description | Bates No. | Deposition Exhibit | Defendants' Objection |
|---|---|---|---|---|---|
| 001 | 12/09/2020 | Email from A. Mashinsky to J. Stone dated December 9, 2020. | CEL_KEY_00005057 | | |
| 002 | 2/11/2021 | Email thread between A. Kane, D. Reichelt, L. Kroll, and J. Stone dated February 10-11, 2021. | CEL_KEY_00001417 | | |
| 003 | 3/31/2021 | WhatsApp Thread between G. Ficht and J. Stone, dated March 31, 2021. | CEL_KEY_00001428 | | |
| 004 | 4/5/2021 | Spreadsheet dated April 5, 2021. | CEL_KEY_00001419 | Stone, Exhibit 2 | |
| 005 | | [INTENTIONALLY OMITTED] | | | |
| 006 | 4/7/2022 | Email from K. Roche to M. Hurley dated April 7, 2022. | | | |
| 007 | 10/28/2022 | Defendants' Responses and Objections to Plaintiff's First Set of Interrogatories, dated October 28, 2022. | | | |
| 008 | 10/31/2022 | Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises to Quantstamp, Inc. by Plaintiffs, dated October 31, 2022. | | | |
| 009 | 11/14/2022 | Declaration of Shiran Kleiderman in Support of Celsius' Motion for Preliminary Injunction, dated November 14, 2022 [ECF No. 22] ("Kleiderman Declaration"). | | | Rule 802 |
| 010 | 11/15/2022 | Declaration of Ron Sabo in Support of Celsius' Motion for Preliminary Injunction, dated November 15, 2022 [ECF No. 27] ("Sabo Declaration"). | | | Rule 802 |

| PX No. | Date | Description | Bates No. | Deposition Exhibit | Defendants' Objection |
|--------|------|-------------|-----------|--------------------|-----------------------|
| 011 | n/a | Sabo Declaration, Exhibit 1, Spreadsheet of Cryptopunks [ECF No. 27- 1]. | | | Rule 802 |
| 012 | n/a | Sabo Declaration, Exhibit 2, Details of February 11, 2021 Purchase of Cryptopunk [ECF No. 27-2]. | | | Rule 802 |
| 013 | n/a | Sabo Declaration, Exhibit 3, Spreadsheet of Cryptopunk Transfers [ECF No. 27-3]. | | | Rule 802 |
| 014 | n/a | Sabo Declaration, Exhibit 4, Transaction Histories for Cryptopunks 6124, 638, 8472, and 4347 [ECF No. 27-4]. | | | Rule 802 |
| 015 | n/a | Sabo Declaration, Exhibit 5, Transaction Details re Transfer of 300 ETH to 0x1c [ECF No. 27-5]. | | | Rule 802 |
| 016 | n/a | Sabo Declaration, Exhibit 6, Spreadsheet of Bullrun Babes Transfers [ECF No. 27-6]. | | | Rule 802 |
| 017 | n/a | Sabo Declaration, Exhibit 7, 0x583 Bullrun Babes Purchase Transaction Details [ECF No. 27-7]. | | | Rule 802 |
| 018 | n/a | Sabo Declaration, Exhibit 8, Transfer of 150 ETH to 0x1c [ECF No. 27-8]. | | | Rule 802 |
| 019 | n/a | Sabo Declaration, Exhibit 9, Transaction Details of March 3 Bullrun Babes Purchase [ECF No. 27-9]. | | | Rule 802 |
| 020 | n/a | Sabo Declaration, Exhibit 10, Transfers of ETH from 0x1c [ECF No. 27-10]. | | | Rule 802 |

| PX No. | Date | Description | Bates No. | Deposition Exhibit | Defendants' Objection |
|---|---|---|---|---|---|
| 021 | n/a | Sabo Declaration, Exhibit 11, Transfer of ETH from 0xb1 to 0x50dd [ECF No. 27-11]. | | | Rule 802 |
| 022 | n/a | Sabo Declaration, Exhibit 12, Tornado Cash Transfer Spreadsheet [ECF No. 27-12]. | | | Rule 802 |
| 023 | n/a | Sabo Declaration, Exhibit 13, Transaction History of 0xfc2 from February 19 to February 21, 2021 [ECF No. 27-13]. | | | Rule 802 |
| 024 | n/a | Sabo Declaration, Exhibit 14, Transaction Details of Sept. 17, 2021 Airdrop of DAI [ECF No. 27-14]. | | | Rule 802 |
| 025 | n/a | Sabo Declaration, Exhibit 15, Transfer of DAI from 0xb1 to 0x8cc [ECF No. 27-15]. | | | Rule 802 |
| 026 | n/a | Sabo Declaration, Exhibit 16, Transaction Details of Smart Contract with 1inch [ECF No. 27-16]. | | | Rule 802 |
| 027 | n/a | Sabo Declaration, Exhibit 17, Three Conversions of DAI into ETH [ECF No. 27-17]. | | | Rule 802 |
| 028 | n/a | Sabo Declaration, Exhibit 18, 0x8cc Transaction History [ECF No. 27-18]. | | | Rule 802 |
| 029 | n/a | Sabo Declaration, Exhibit 19, 0x722 Transaction List [ECF No. 27-19]. | | | Rule 802 |
| 030 | | [INTENTIONALLY OMITTED] | | | |
| 031 | | [INTENTIONALLY OMITTED] | | | |
| 032 | | [INTENTIONALLY OMITTED] | | | |

| PX No. | Date | Description | Bates No. | Deposition Exhibit | Defendants' Objection |
|--------|------|-------------|-----------|--------------------|-----------------------|
| 033 | | [INTENTIONALLY OMITTED] | | | |
| 034 | | [INTENTIONALLY OMITTED] | | | |
| 035 | | [INTENTIONALLY OMITTED] | | | |
| 036 | | [INTENTIONALLY OMITTED] | | | |
| 037 | 10/01/2020 | Hurley Declaration, Exhibit 27, Memorandum of Understanding between Celsius Network Limited and KeyFi, Inc., dated October 1, 2020 [ECF No. 24-1] | | | |
| 038 | 10/05/2020 | Hurley Declaration, Exhibit 28, Limited Liability Company Agreement of Celsius KeyFi LLC, dated October 5, 2020 [ECF No. 24-2] | | | |
| 039 | 10/07/2020 | Hurley Declaration, Exhibit 29, Service Agreement between Celsius Network Limited and KeyFi, Inc., dated October 7, 2020 [ECF No. 24-3] | | | |
| 040 | 12/31/2020 | Hurley Declaration, Exhibit 30, Asset Purchase Agreement among KeyFi, Inc., Celsius Network Limited, and Celsius KeyFi LLC, dated December 31, 2020 [ECF No. 24-4] | | | |
| 041 | 12/31/2020 | Hurley Declaration, Exhibit 31, Service Agreement between Celsius KeyFi LLC and Celsius Network Limited, dated December 31, 2020 [ECF No. 24-5] | | | |

| PX No. | Date | Description | Bates No. | Deposition Exhibit | Defendants' Objection |
|---|---|---|---|---|---|
| 042 | 03/09/2021 | Hurley Declaration, Exhibit 32, March 9, 2021 email from Stone to Celsius CEO Alex Mashinsky [ECF No. 24-6] | | | |
| 043 | 03/26/2021 | Email from R. Cohen to J. Stone, attaching March 26, 2021 board letter to Stone and KeyFi, and March 26, 2021 Celsius KeyFi Board resolution. [ECF No. 24-7] | | | |
| 044 | 03/26/2021 | Hurley Declaration, Exhibit 34, March 26, 2021 email from J. Stone to Celsius CEO A. Mashinsky [ECF No. 24-8] | | | |
| 045 | 03/27/2021 | Hurley Declaration, Exhibit 35, March 27, 2021 WhatsApp exchange between J. Stone and S. Kleiderman. [ECF No. 24-9] | | | |
| 046 | 04/07/2021 | Hurley Declaration, Exhibit 36, April 7, 2021 letter from M. Hurley to D. Kaiser [ECF No. 24-10] | | | |
| 047 | 05/17/2021 | Hurley Declaration, Exhibit 37, May 17, 2021 letter from M. Hurley to D. Kaiser [ECF No. 24-11] | | | |
| 048 | 08/08/2022 | Hurley Declaration, Exhibit 38, August 8, 2022 U.S. Treasury Department Press Release re Tornado Cash [ECF No. 24-12] | | | Rule 802 |
| 049 | 09/09/2022 | Hurley Declaration, Exhibit 40, Letter from M. Hurley to K. Roche, dated September 9, 2022 [ECF No. 24-14] | | | |
| 050 | 09/12/2022 | Hurley Declaration, Exhibit 41, Letter from K. Roche to M. Hurley, dated September 12, 2022 [ECF No. 24-15] | | | |

| PX No. | Date | Description | Bates No. | Deposition Exhibit | Defendants' Objection |
|---|---|---|---|---|---|
| 051 | 09/13/2022 | Hurley Declaration, Exhibit 42, Letter from M. Hurley to K. Roche, dated September 13, 2022 [ECF No. 24-16] | | | |
| 052 | 10/23/2022 | Hurley Declaration, Exhibit 43, October 23, 2022 Letter from Celsius to StakeHound SA [ECF No. 24-17] (HIGHLY CONFIDENTIAL) | | | |
| 053 | 11/15/2022 | Declaration of Patrick Holert in Support of Celsius' Motion for Preliminary Injunction [ECF No. 25] | | | Rule 802 |
| 054 | 11/29/2022 | Letter from M. Hurley to K. Roche re Expedited Discovery, dated November 29, 2022. | | | Rule 402 |
| 055 | 11/29/2022 – 12/13/2022 | Email Thread between Akin Gump and K. Roche re Letter Regarding Expedited Discovery, dated November 29 to December 13, 2022. | | | Rule 402 |
| 056 | | [INTENTIONALLY OMITTED] | | | |
| 057 | 12/2/2022 | Hurley Supplemental Declaration, Exhibit 1, Letter from M. Hurley to K. Roche, dated December 2, 2022 [ECF No. 43-1]. | | | |
| 058 | 10/27/2021 | Hurley Supplemental Declaration, Exhibit 2, Standstill and Tolling Agreement, signed on October 27, 2021 [ECF No. 43-2]. | | | Rule 402, Rule 408 |
| 059 | 12/05/2022 | Declaration of Alex Mashinsky in Support of Plaintiffs' Motion for a Temporary Restraining Order and Preliminary Injunction, dated December 5, 2022 [ECF No. 44]. | | | Rule 802 |

| PX No. | Date | Description | Bates No. | Deposition Exhibit | Defendants' Objection |
|--------|------|-------------|-----------|--------------------|-----------------------|
| 060 | 12/05/2022 | Reply Declaration of Patrick Holert in Further Support of Celsius' Motion for Preliminary Injunction [ECF No. 45]. | | | Rule 802 |
| 061 | 12/16/2022 | Joint Stipulation and Agreed Order Between Plaintiffs Celsius Network Limited and Celsius KeyFi LLC and Defendants Jason Stone and KeyFi Inc., dated December 16, 2022 [ECF No. 52]. | | | |
| 062 | 12/20/2022 | Affidavit of Jason Stone Pursuant to Joint Stipulation and Agreed Order (ECF No. 52), dated December 20, 2022 ("Stone Affidavit"). | | | |
| 063 | 12/20/2022 | Stone Affidavit, Exhibit A (Document produced by Defendants). | | | |
| 064 | 12/20/2022 | Revised Affidavit of Jason Stone Pursuant to Joint Stipulation and Agreed Order (ECF No. 52), dated December 20, 2022 ("Revised Stone Affidavit"). | | Stone, Exhibit 4 | |
| 065 | 12/20/2022 | Revised Stone Affidavit, Exhibit A (Document produced by Defendants). | | Stone, Exhibit 5 | |
| 066 | | [INTENTIONALLY OMITTED] | | | |
| 067 | | [INTENTIONALLY OMITTED] | | | |
| 068 | 01/03/2023 | Defendants' Asset Spreadsheet  (sent 1.3.2023, 12:50 a.m.) (Document produced by Defendants). | | | |
| 069 | 01/03/2023 | Defendants' Asset Spreadsheet (sent 1.3.2023, 5:40 p.m.) (Document produced by Defendants). | | | |

**<u>Exhibit B</u>**

Defendants' Exhibit List

| DX No. | Date | Description | Bates No. | Deposition Exhibit | Plaintiffs' Objection(s) |
|---|---|---|---|---|---|
| 001 | 2020-08-19 | Whatsapp Messaging between Connor Nolan and Harumi Urata Thompson | CEL_KEY_00000023 | Nolan Dep. Ex. 1 | |
| 002 | 2020-10-14 | Whatsapp Messaging between Connor Nolan and Harumi Urata Thompson | CEL_KEY_00000044 | Nolan Dep. Ex. 4 | |
| 003 | 2021-01-07 | Whatsapp Messaging between Connor Nolan and Harumi Urata Thompson | CEL_KEY_00000072 | Nolan Dep. Ex. 5 | |
| 004 | 2021-01-08 | Whatsapp Messaging between Connor Nolan and Harumi Urata Thompson | CEL_KEY_00000103 | Nolan Dep. Ex. 9 | |
| 005 | 2021-03-11 | Whatsapp Messaging between Connor Nolan and Harumi Urata Thompson | CEL_KEY_00000134 | Nolan Dep. Ex. 10 | |
| 006 | 2021-05-27 | Email message between Alex Mashinsky, Connor Nolan, Harumi Urata-Thompson, Waseem Shabout, Shiran Kleiderman | CEL_KEY_00001292 | Nolan Dep. Ex. 18 | |
| 007 | 2021-03-11 | Whatsapp Messaging between Connor Nolan, Waseem Shabout, Gabe Ficht, and Dean Tappen | CEL_KEY_00000756 | Nolan Dep. Ex. 17 | |
| 008 | 2021-06-23 | Whatsapp Messaging between Connor Nolan and Dean Tappen | CEL_KEY_00000206 | Nolan Dep. Ex. 12 | |
| 009 | 2020.09.02 | Email chain between Alex Mashinsky, Jason Stone, Harumi Urata-Thompson, Asaf Iram, and Nuke Goldstein. | KEYFI-00004222 | | FRE 802 |
| 010 | 2020.09.04 | Email chain between Alex Mashinsky, Jason Stone, Harumi Urata-Thompson, and Dean Tappen. | KEYFI-00004208 | | |
| 011 | 2020.09.05 | Email chain between Alex Mashinsky, Jason Stone, Harumi Urata-Thompson, and Dean Tappen. | KEYFI-00004183 | | FRE 802 |
| 012 | 2020.09.10 | Email chain between Alex Mashinsky, Jason Stone, and Harumi Urata-Thompson. | KEYFI-00004141 | | FRE 802 |
| 013 | 2020.09.10 | Email chain between Alex Mashinsky, Jason Stone, and other Celsius employees. | KEYFI-00004198 | | FRE 802 |
| 014 | 2020.09.23 | Email chain between Alex Mashinsky, Jason Stone, and Harumi Urata-Thompson. | KEYFI-00004179 | | FRE 802 |
| 015 | 2020.10.13 | Email chain between Alex Mashinsky, Jason Stone, Harumi Urata-Thompson and other Celsius employees. | KEYFI-00004223 | | |

| 016 | 2020.10.28 | Email chain between Harumi Urata Thompson, Jason Stone, Alex Mashinsky, Connor Nolan, and Shiran Kleiderman. | KEYFI-00004157 | | FRE 802 |
| 017 | 2020.11.01 | Email between Alex Mashinsky and Jason Stone. | KEYFI-00004014 | | |
| 018 | 2020.12.09 | Email chain between Alex Mashinsky, Jason Stone, Harumi Urata-Thompson and other Celsius employees | KEYFI-00004046 | | FRE 802 |
| 019 | 2020.12.23 | Email from Sid Nayak to Alex Mashinsky, Jason Stone, Connor Nolan, and other Celsius employees. | KEYFI-00004015 | | |
| 020 | 2021.01.04 | Email chain between Patrick Holert and Joseph Xu from Quantstamp copying Jason Stone. | KEYFI-00004152 | | |
| 021 | 2021.01.07 | Email chain between Alex Mashinsky, Jason Stone, Chad Wells, and Camilla Churcher. | KEYFI-00004154 | | |
| 022 | 2021.01.07 | Email from Alex Mashinsky, to Jason Stone, and Patrick Holert. | KEYFI-00003995 | | |
| 023 | 2021.01.23 | Email from Alex Mashinsky, to Jason Stone, Harumi Urata-Thompson and Ron Pavon. | KEYFI-00004146 | | |
| 024 | 2021.12.13 | Dollar basis accounting of KeyFi related trading activity. | KEYFI-00003994 | | FRE 802, 1006 |
| 025 | 2021.01.08 | Public Twitter post by Jason Stone under the @0xb1 account located at https://twitter.com/0x_b1/status/1347792022397210624. | | | FRE 802 |
| 026 | 2021.01.13 | Public Twitter post by Jason Stone under the @0xb1 account located at https://twitter.com/0x_b1/status/1349428793413431296. | | | FRE 802 |
| 027 | 2021.01.21 | Public Twitter post by Jason Stone under the @0xb1 account located at https://twitter.com/0x_b1/status/1352331844730187776 . | | | FRE 802 |
| 028 | 2021.01.26 | Public Twitter post by Jason Stone under the @0xb1 account located at https://twitter.com/0x_b1/status/1354242619006574592. | | | FRE 802 |
| 029 | 2021.02.11 | Public Twitter post by Jason Stone under the @0xb1 account located at | | | FRE 802 |

| | | https://twitter.com/0x_b1/status/135995569692 6793728. | | | |
|---|---|---|---|---|---|
| 030 | 2021.02.08 | Public Twitter post by Jason Stone under the @0xb1 account located at https://twitter.com/0x_b1/status/135899530946 9306880. | https://twitter.com/0x_b1/ status/1358995309469306 880 | | FRE 802 |
| 031 | 2022.11.28 | Jason Stone Affidavit. | | | FRE 802 |
| 032 | June     18, 2021 | Exhibit A to Stone Affidavit - Letter from Corey Worcester to Mitch Hurley | | | FRE 802 |
| 033 | July      7, 2022 | Exhibit B to Stone Affidavit – Complaint filed by KeyFi against Celsius Network Limited and Celsius KeyFi. | | | FRE 802 |