Page 1

1    UNITED STATES BANKRUPTCY COURT

2    SOUTHERN DISTRICT OF NEW YORK

3    Case No. 22-10964-mg

4    Adv. Case No. 22-01139-mg

5    - - - - - - - - - - - - - - - - - - - - - - - - - - x

6    In the Matter of:

7

8    CELSIUS NETWORK, LLC,

9

10          Debtor.

11   - - - - - - - - - - - - - - - - - - - - - - - - - - x

12   CELSIUS NETWORK LIMITED, et al.,

13                Plaintiff,

14          v.

15   STONE, et al.,

16                Defendants.

17   - - - - - - - - - - - - - - - - - - - - - - - - - - x

18                United States Bankruptcy Court

19                One Bowling Green

20                New York, NY  10004

21

22                January 10, 2023

23                10:57 AM

24

25

1    B E F O R E :

2    HON MARTIN GLENN

3    U.S. BANKRUPTCY JUDGE

4

5    ECRO:   KAREN CAPPIELLO

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1    HEARING re 22-01139-mg Celsius Network Limited et al v.

2    Stone et al Status Conference Using Zoom for Government.

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25    Transcribed by:  Sonya Ledanski Hyde

```
 1   A P P E A R A N C E S :

 2

 3   AKIN GUMP STRAUSS HAUER FELD, LLP

 4        Attorneys for Plaintiffs Celsius Network Limited

 5        One Bryant Park

 6        New York, NY 10036

 7

 8   BY:  DEAN CHAPMAN

 9        MITCHELL HURLEY

10        ELIZABETH SCOTT

11

12   KYLE ROCHE P.A.

13        Attorneys for KeyFi, Stone

14        260 Madison Avenue, 8th Floor

15        New York, NY 10016

16

17   BY:  KYLE WILLIAM ROCHE

18

19   ALSO PRESENT:

20   UDAY GORREPATI

21   ANA LUCIA HURTADO

22   MICHAEL STANLEY

23   COURTNEY BURKS STEADMAN

24   KAILA ZAHARIS

25   CHARLES M. ABONCE
```

Page 5

1   ARTUR ABREU

2   DAVID J. ADLER

3   KATHERINE AIZPURU

4   EMMANUEL ALBINO

5   SAMEER ALIFARAG

6   NELLY ALMEIDA

7   RENE A. AMAYA

8   BRIAN BARNES

9   ROBERT BEAULAC

10   CHRIS BECIN

11   HUGH BELLAMY

12   JARNO BERG

13   SOMA BISWAS

14   MATTI BLECHER

15   OCTAVE J. BOURGEOIS

16   PHILIP BRENDEL

17   JOHAN BRONGE

18   VINCENT JAMES BURNISKE

19   AMY CASTOR

20   JAY CHAI

21   ERIC CHAN

22   RICKIE CHANG

23   KARM CHOUDHRY

24   ROBERT CHRISTIANSEN

25   CHRISTINA CIANCARELLI

Page 6

1   JOSHUA CLARK

2   CHRISTOPHER COCO

3   DAKEN COLEMAN

4   AARON COLODNY

5   ROBERT J. COMINOS

6   MICHAEL CONLON

7   LAFAYETTE A. COOK

8   KAREN CORDRY

9   CARL J. COTE

10   PAUL CUPP

11   DAVID DALHART

12   JOSH DAUM

13   JAMES B. DEGLAU

14   MARY DELGADO

15   CURT DELL

16   THOMAS DIFIORE

17   TRISTAN LUIS DIAZ

18   REUBEN DIZENGOFF

19   SCOTT DUFFY

20   DREW DUFFY

21   DENNIS DUNNE

22   BEN EADES

23   JANELL ECKHARDT

24   DANIEL EGGERMANN

25   SIMON ELIMELECH

Page 7

```
 1   PAUL FABSIK

 2   DAVID AVERY FAHEY

 3   ALEXANDER FERNANDEZ

 4   FLORENCE FLANNIGAN

 5   FORREST L. FORMSMA

 6   WILLIAM FOSTER

 7   DEBORAH FRANKEL

 8   DANIEL FRISHBERG

 9   ARLISHEA FULTON

10   REBECCA GALLAGHER

11   CHRISTOPHER GASTELU

12   JASLEIGH GEARY

13   UTSAV GHOSH

14   BRADLEY GIARDIELLO

15   VINCENT GOETTEN

16   RYAN GOLDSTEIN

17   RAMON GONZALES

18   MICHAEL DAVID GRAUBERT

19   TAMMY L. GROVER

20   MIRA HAQQANI

21   PHILIPPE HEGI

22   SAMUEL P. HERSHEY

23   JEREMY HILL

24   DAVID HOLLERITH

25   KYLE HOLZHAUER
```

Page 8

1  CHRISTIAN DARIUS HUNKELER

2  JASON IOVINE

3  RAUL JIMENEZ

4  GREG KACKOWSKI

5  TYLER KALIN

6  JEFF KAPLAN

7  ROBERT M. KAUFMANN

8  SAM KAVA

9  MIKAELA KENSINGTON

10  CORANNE KERR

11  KULPREET S. KHANUJA

12  DIETRICH KNAUTH

13  TOMAS KOSTER

14  BRYAN KOTLIAR

15  JOSEPH LALIA

16  HUONG LAM

17  MARK D. LARRABEE

18  JEAN-PHILIPPE LATREILLE

19  CATHY LAU

20  VINCENT EDWARD LAZAR

21  ANDREW LEBLANC

22  JOSEPH LEHRFELD

23  OLEKSANDR LEONENKO

24  MARK LINDSAY

25  ISAAC R. LLEWELLYN

Page 9

1    DAVID LOS ARCOS CARCAMO

2    JASON LU

3    KEVIN M. MANUS

4    CHASE MARSH

5    KYLE MASON

6    BRIAN S. MASUMOTO

7    CAROL MAUNDER

8    DAVID MAYO

9    KEITH MCCORMACK

10   JAMES MCNAMARA

11   ALEXANDER MICHAELS

12   ERICKA MIGNUCCI

13   LAYLA MILLIGAN

14   TIMON MITRAKAS

15   CATARINA MOURA

16   KEITH NOYES

17   MARY O'BRIEN

18   KYLE J. ORTIZ

19   SAM OSBORNE

20   RICHARD E. OSWALD

21   SHANE OWENS

22   CHRISTOPHER PAGNANELLI

23   MILIN PATEL

24   PETER PATZAK

25   ARIE PELED

Page 10

```
 1   GREGORY F. PESCE
 2   SHOBA PILLAY
 3   LUKE PORCARI
 4   DONALD POYNTER
 5   ANNEMARIE V. REILLY
 6   TIMOTHY REILLY
 7   ANUBHAV RICHARDS
 8   ANDREW S. RICHMOND
 9   MARK ROBINSON
10   ANDREW RUDOLPH
11   PRIYA SAIHGAL
12   DAVID SCHNEIDER
13   NOAH M. SCHOTTENSTEIN
14   WILLIAM D. SCHROEDER
15   DAVID SENES
16   RAFFAELE SENESE
17   EZRA SERRUR
18   DON SMITH
19   PETER J. SPROFERA
20   CALIN THOMAS ST. HENRY
21   GERD STABBERT
22   PAUL STAPLETON
23   COURTNEY BURKS STEADMAN
24   BRIAN STOUT
25   VINCE SULLIVAN
```

1    NIKHIL SURI

2    CATHY TA

3    LUCY L. THOMSON

4    DAVID TURETSKY

5    ELVIN TURNER

6    CHRISTIAN TVERSTED

7    VICTOR UBIERNA DE LAS HERAS

8    OLGA ULANOVA

9    TONY VEJSELI

10   CAROLINE WARREN

11   CARL N. WEDOFF

12   MELANIE WESTOVER YANEZ

13   ZACHARY A. WILDES

14   KEITH WOFFORD

15   LILY YARBOROUGH

16   ANNE YEILDING

17   TAK YEUNG

18   ANDREW YOON

19

20

21

22

23

24

25

1                    P R O C E E D I N G S

2            CLERK:  All right.  Starting the recording for

3    January 10th, 2023 at 11:00 a.m.  Calling 22-1139, Celsius

4    Network Limited et al. versus Stone et al.  All right.  For

5    the parties that have joined -- one person dropped off --

6    Kaila, if you could unmute and give your appearance, please.

7            MS. ZAHARIS:  Hi.  I'm actually not appearing

8    today.  I'm just listening.  I'm here for the Celsius

9    adversary proceeding.

10           CLERK:  Right.  So we'll be starting at 11:00.  Is

11   Michael Stanley going to be speaking?

12           MS. ZAHARIS:  I do not believe so.  I actually

13   don't believe he'll be attending.

14           CLERK:  Okay.  Do you know if anyone from

15   Plaintiff's counsel is attending?

16           MS. ZAHARIS:  Yes.  They will be -- they will

17   likely be logging on closer to 11:00.  I think they got the

18   memo that they don't need to join yet, but I do --

19           CLERK:  Got you.

20           MS. ZAHARIS:  But it will Mitch Hurley, Dean

21   Chapman, and Lizzie Scott.

22           CLERK:  Okay.  Great.  Thank you.

23           MS. ZAHARIS:  Apologies for being quite early.

24           CLERK:  No problem.  No problem.  All right.  You

25   can pause the recording.

Page 13

```
 1              (Recording paused)

 2              CLERK:  All right.  Mr. Hurley, if we could get

 3    your appearance, please.

 4              MR. HURLEY:  Certainly.  Mitch Hurley with Akin

 5    Gump Strauss Hauer & Feld on behalf of the Plaintiffs,

 6    Celsius Network and Celsius KeyFi.

 7              CLERK:  All right.  Thank you.  Mr. Chapman?

 8              MR. CHAPMAN:  Good morning.  Dean Chapman of Akin

 9    Gump Strauss Hauer & Feld for the Celsius Plaintiffs in the

10    Celsius versus Stone adversary proceeding.

11              CLERK:  Okay.  Thank you.  Mr. Roche?

12              MR. ROCHE:  Kyle Roche from Kyle Roche PA on

13    behalf of Jason Stone and KeyFi, Inc.

14              CLERK:  Right.  And Elizabeth Scott is going to

15    join in a moment, Judge.

16              THE COURT:  Okay.

17              CLERK:  Good morning, Elizabeth.  If you could

18    unmute and give your appearance, -please.

19              MS. SCOTT:  Good morning.  Elizabeth Scott,

20    special litigation counsel on behalf of the Celsius

21    Plaintiffs.

22              CLERK:  All right.  Thank you.  Judge, would you

23    like to start?

24              THE COURT:  Yes, I would.  Thank you very much and

25    good morning to everybody.
```

1                   I wanted to update you all on a problem and see

2       how we'll deal with it.  Unfortunately, my wife has COVID-19

3       and under the protocol that our court has adopted which is

4       essentially the district court protocol, I'm not permitted -

5       - I've -- as of yesterday, I was negative -- but I'm not

6       permitted to enter the courthouse, and so, you know, I

7       wanted to get your input.  We can proceed in one of two

8       ways.

9                   One is with me remote and that would still leave

10      questions whether you all should be in the courtroom and I

11      will have -- be able to observe and participate from home in

12      everything that goes on in the courtroom.  So you will each

13      be able to cross-examine witnesses in front of you rather

14      than on a Zoom screen.

15                  And the other alternative which is a difficult one

16      for me is moving the hearing dates.  My calendar is

17      extremely crowded over the next month or so.  I've looked at

18      it and I would have to move some matters around, but the

19      alternative that I see as available with moving some things

20      around would be for -- and we set aside two days for this.

21      I don't know in light of your, you know, narrowing, you

22      know, exhibits and -- whether you still need -- feel you

23      need two days, but Wednesday, January 25th, Thursday,

24      January 26th and Friday, January 27th are really the first

25      dates that I -- with moving things around, I could make

Page 15

1    myself available.

2           So those, unfortunately, are the alternatives that

3    we face right now.  Needless to say, it's not what I had

4    hoped for but, you know, under the current protocol, I can't

5    enter the courthouse.  The earliest -- assuming that I

6    continue to test negative, the earliest I could enter the

7    courthouse is next week.

8           MR. ROCHE:  Your Honor, this is Kyle Roche for

9    Defendants.  Our preference would be to go forward tomorrow

10   and have Your Honor appear remote.

11          THE COURT:  Mr. Hurley?

12          MR. HURLEY:  Your Honor, first of all, I hope your

13   wife feels better soon and I hope you don't come down with

14   it.  So, you know, I think we probably would be okay either

15   way.  I mean, we did talk about the -- kind of importance of

16   assessing credibility in this case.

17          THE COURT:  I agree with that.

18          MR. HURLEY:  So that's the only thing that makes

19   me hesitate at all.  So -- but certainly, if the Court has a

20   preference, we will be guided by that.

21          THE COURT:  I don't have a preference other than

22   that because, you know, in the preparation I've done to this

23   point, credibility does seem to be quite important, and for

24   that reason, if the trial goes forward over the next few

25   days, it's my strong preference that you all be together so

Page 16

1    that we have in effect live cross-examination.

2           The technology that we have in my courtroom will

3    certainly allow me to have full screen of the witness.  What

4    I would do is -- I have all of your exhibits and I will use

5    a second computer with the exhibits on it so that -- I don't

6    want you sharing the screen.  The problem with sharing the

7    screen is I wind up with a very small image of the witness.

8    I want to be able to view -- have a full view of whoever is

9    testifying, and I am able to do that.  It will be a little

10   odd.  You'll be looking at an empty judge's chair.

11          I would have my law clerks in the courtroom during

12   the hearing, but because obviously credibility from both

13   sides' standpoint is a key factor here, I do want you all in

14   the same room.  I don't know whether Akin Gump has a -- you

15   know, the other alternative -- some firms have mute

16   courtrooms in their offices.  I don't know whether Akin does

17   or not.  One place or another, I want you all together.

18          MR. HURLEY:  We don't have mute courtroom.  We

19   have conference space, certainly, that has some technology,

20   but I know that my team has been down to court already and I

21   think it's been pretty happy with the technology that's in

22   the courtroom.  So I'm not sure that we're going to be able

23   to match that at Akin on short notice.

24          THE COURT:  That would be then -- you'd all be in

25   the courtroom and, you know, you will -- I think you should

Page 17

1    be able to see me on the screen -- on one of the screens.

2    There are large screens in the courtroom, and I will --

3    assuming we go forward -- I mean, I had a conversation

4    yesterday with the clerk -- chief deputy clerk of the court.

5    Obviously, I've talking with my law clerks.  This is all

6    just really come up in the last few days, obviously, but --

7    so I did have the discussion and it seemed to me -- again, I

8    had tried to see whether there were dates that I could cut

9    out for -- you know, carve out for next week and that just

10   wasn't feasible.  There's some other Celsius hearings and

11   other things.

12             MR. HURLEY:  I'm actually gone next week.  I'm in

13   another state.

14             THE COURT:  Okay.

15             MR. HURLEY:  To answer your questions, Your Honor,

16   my belief is that this is a one-day hearing.

17             THE COURT:  Okay.

18             MR. HURLEY:  If that is any help.  I wonder if it

19   makes sense for me and Mr. Roche to confer briefly and come

20   back to you with a final conclusion on where we stand.

21             THE COURT:  Sure.

22             MR. HURLEY:  Would that work?

23             THE COURT:  Yeah.  So let me ask this now and --

24   what I've been trying to focus on is, what's the area of

25   continued disagreement between you as to what relief the

Page 18

1    Debtor should be entitled to.  Let me hear from you first,

2    Mr. Hurley.

3            MR. HURLEY:  Yes.  So the primary thrust --

4    remaining thrust -- of our motion is that Celsius is seeking

5    an injunction -- a status quo injunction -- requiring that

6    the assets that we maintain were misappropriated from the

7    Celsius wallets and the proceeds of those assets will not be

8    further dissipated or transferred so that they'll still be

9    there as at the end of the case if Celsius prevails.  And

10   that's the primary thing -- my understanding -- that the

11   Defendants disagree with.  They don't -- they want to be

12   able to continue to use those assets.

13           We also have asked the Court to limit the

14   Defendants use of things like Tornado Cash.  Right now, you

15   can't use Tornado Cash, obviously, because it's been banned.

16   But also any other kind of mixer that would allow the

17   Defendants to conceal the destination of transfers.  That's

18   important to us, but it's sort of the secondary, I guess,

19   branch of relief that still remains.  The main one is the

20   freezing of the assets during the course of the case.

21           THE COURT:  All right.  Mr. Roche.

22           MR. ROCHE:  Yes.  I think Mr. Hurley fairly

23   accurately summarizes the remaining dispute.  Essentially,

24   the core contention is that the transfers at issue here were

25   authorized.  Celsius on one hand for -- an affidavit

Page 19

1    submitted by Mr. Mashinsky claims that the transactions at

2    issue were unauthorized.  We claim the transactions were

3    authorized as part of the compensation owed to KeyFi under

4    the asset purchase agreement entered into on January 11th,

5    2021.

6              That's the core issue.  We oppose the relief

7    requested -- the status quo -- on a separate ground.  That

8    is, as part of the asset purchase agreement, the only assets

9    left with KeyFi were the assets that are issue.  If a status

10   quo injunction were entered, that would leave KeyFi without

11   the ability to defend itself and pay legal fees.  We -- the

12   assets that, you know, we worked as Your Honor is well aware

13   -- we've worked over the past couple weeks to give as

14   detailed of a mapping as we're capable of concerning the

15   assets -- where the assets were two years ago and where the

16   assets are now.

17             The parties -- Defendants -- don't plan on moving

18   the assets except to pay for expenses as they arise and for

19   -- KeyFi is continuing to use the assets to earn interest in

20   the -- as one does in the decentralized finance space and so

21   they do not believe it's appropriate given the standards for

22   preliminary injunction for Celsius to be entitled to, one,

23   those activities to stop, and two, for those assets to no

24   longer be available to pay for costs and fees in this case.

25             MR. HURLEY:  Your Honor, I didn't understand you

Page 20

1    to be asking for argument.  I obviously have some responses

2    to what Mr. Roche just said.  I'm happy to --

3           THE COURT:  No.  I understand.  I'm not looking

4    for the argument.  It looked from what I reviewed, the --

5    what Mr. Roche just raised about using assets to fund the

6    defense of the action -- I understood that as part of -- one

7    of the things they wanted to continue to do.  I don't know

8    whether you've tried to reach -- and I certainly understand

9    if you haven't done it, Mr. Hurley -- that is, whether you

10   can reach an agreement on a permissible budget as to how

11   much you would permit to be used and -- rather than proceed

12   with the preliminary injunction, you could seek to agree to

13   an expedited schedule to permit, you know, a final

14   adjudication of the matter which would include a final

15   injunction and whatever other relief you're seeking.

16          I'm not pushing it.  I'm just inquiring.

17          MR. HURLEY:  Let me respond in two ways.  First,

18   there is substantial case law that we'll citing to Your

19   Honor that under circumstances like these where the amount

20   in question seeking to enjoined is amount that the Plaintiff

21   believes that he has an equitable interest in and is the

22   amount that is the subject of the action that a defendants

23   plea that the injunction be refused because they want to use

24   those assets to pay their own legal fees should be rejected,

25   but having said that, after the last call, we did as you

Page 21

```
1     asked and we had another discussion about potential

2     settlement.  Without getting into the details, you know, we

3     discussed the possibility of various routes to avoiding the

4     hearing and we were not in the same ballpark.

5               THE COURT:  Okay.  That's fine.  All right.  All

6     right.  Let's plan on going forward tomorrow.  I will work

7     our tech people this afternoon to try and firm up how the

8     technology will work.  I mean, from your standpoint, other

9     than looking at an empty chair in front of you, I think it

10    will operate in the ordinary way.

11              Let me ask, who are the live witnesses who I will

12    hear from?  First Mr. Hurley.

13              MR. HURLEY:  Alex Mashinsky and Patrick Holert.

14              THE COURT:  Okay.  Mr. Roche?

15              MR. ROCHE:  Jason Stone and Connor Nolan.

16              MR. HURLEY:  And, Your Honor, we had discussed the

17    possibility of me and Mr. Roche conferring once before

18    finalizing whether we're going to proceed tomorrow.  Is that

19    still something that --

20              THE COURT:  Sure.  Why don't you do that.  I will

21    -- I'll be touch.  You know, I'm going to speak with the

22    clerk and the chief deputy clerk and some of the tech people

23    to make sure -- and as I say, I did talk yesterday about it

24    we went through a scenario that this would go forward with

25    me not in the judge's chair.  But as I said, I will have the
```

Page 22

1    exhibits on a separate computer, and so what you'll need to

2    do is -- and I think I have them organized in separate

3    directories -- Plaintiff -- and then directories so you'll

4    just have to be sure to call out which exhibit and give me

5    just a chance to find it on the computer.

6          It shouldn't be -- I've done the -- I mean, I've

7    had several trials during the pandemic and they actually

8    worked reasonably well and what I did in those was I used

9    multiple computers again, and they were completely remote --

10   people weren't in the courtroom -- but they were completely

11   remote, but I used to avoid the sharing of the screen,

12   because I want to see the witness, using multiple -- I had

13   multiple computers.  I had the exhibits.  It worked pretty

14   well so I've done this before and (indiscernible) you'll all

15   be in the courtroom.

16         MR. HURLEY:  And we'll speak hopefully immediately

17   after this and we'll get back to you within (indiscernible)

18   an hour.

19         THE COURT:  Why don't you -- you can call my law

20   clerk Daniel Slemmer.  You can email him and then he'll be

21   in touch with me and let me know.  As I say, when I looked

22   at the calendar, realistically, the first dates -- and it

23   would require some juggling of other things on the calendar

24   but I concluded I could do that -- would be Wednesday,

25   Thursday, Friday, January 25 through the 27th and I'm not

                                                                    Page 23

1    expecting it's going to take three days.  But those were the

2    days that I could -- because I like to do things consecutive

3    days.  I don't like two hours here or an hour there, you

4    know.  I like to hear things from start to finish.

5              So why don't you -- why don't the two of you

6    confer and let Mr. Slemmer know and he'll promptly let me

7    know.  Okay?

8              MR. ROCHE:  Okay.  Can I raise one thing while we

9    have you here, Your Honor?

10             THE COURT:  Absolutely.

11             MR. HURLEY:  Okay.  So in the event that the trial

12   does go forward tomorrow, it relates to the exhibits.  On

13   January 4th, the parties exchanged exhibit lists

14   (indiscernible) the Court's instruction and last night,

15   quite late, around 11:00, the Defendants asked to add I

16   think 12 new exhibits to the list.  Some of the exhibits are

17   exhibits that we did not produce until -- we being Celsius -

18   - didn't produce until December 29th.  But that's -- but

19   they were not a part of the expedited discovery that Your

20   Honor allowed and that the parties agree to.

21             We produced everything in that expedited round,

22   you know, on time.  Then we continued with plenary discovery

23   and made a production on December 19th.  So of the materials

24   that they've asked to add to the exhibit list last night --

25   first of all, one of the documents we produced with the

Page 24

1    expedited stuff back on December 16th I think and it's a

2    spreadsheet with 9,000 lines in it.

3            And then are some materials that they've -- that

4    are public.  There's some tweets and some Etherscan

5    printouts and all of those things we I guess would submit --

6    it's too late to add them to the exhibit list.  I mean, I

7    don't know about substantively but we've done a lot of prep

8    already and to have a whole bunch of new exhibits put on us,

9    you know, 24 hours before the hearing is problematic.

10           And then remainder are from the December 29th

11   production and I guess with respect to those, again, we'd

12   just submit that, you know, there was some time to identify

13   them and put them on the list and we haven't seen them and

14   it's just too late.  My understanding, Your Honor, was that

15   when you instructed us to engage in expedited discovery, the

16   instruction to both sides was, figure out what you think you

17   need, ask for it on a expedited basis, and that's what

18   you're going to rely on at the hearing.  And Mr. Roche did

19   that.  Celsius did that.

20           We exchanged expedited discovery and those

21   materials were available in plenty of time to put on exhibit

22   lists and to supplement it now, we submit, it would be

23   inconsistent at least with our understanding of the exercise

24   back on November 23rd and gives us very little time to

25   review the new exhibits and prepare.

Page 25

1            THE COURT:  Mr. Roche, let me give you a chance to

2    respond.

3            MR. ROCHE:  Yes, Your Honor.  The number of

4    exhibits we're talking about is 12 exhibits.  Your Honor did

5    say that we did not need to put impeachment exhibits on the

6    exhibit list and while there are a few that we did add that

7    were produced as part of the initial document exchange as

8    we've been preparing over the past week and given the

9    holiday crunch, we would respectfully submit that, given the

10   limited number, we should have those on the list and

11   especially because at least a few of the exhibits were not

12   produced until after the parties exchanged and we do believe

13   are highly relevant to both, you know, the credibility

14   determinations that Your Honor has to make and are relevant

15   for the underlying issues at the heart of this hearing.

16           THE COURT:  All right.  How many of the documents

17   were produced after December 29th of the ones that --

18           MR. HURLEY:  None were after December 29th, Your

19   Honor.  The later produced documents were produced on

20   December 29th and they were not a part of the expedited

21   discovery process.  They were just part of our regular

22   rolling production.

23           THE COURT:  Well, look, here -- I'm going to

24   permit Mr. Roche to add them to his list.  They need to be

25   marked.  I need to get them.  I'm going to reserve any

Page 26

1   decision whether I'm going to permit them to be used.  In

2   part, it's going to depend on for purpose they're being

3   used.  Are they being used for impeachment which didn't have

4   to be included, and I'll just reserve decision.

5           You know, for present purposes and preparing, Mr.

6   Hurley, you ought to assume they'll come in.  I don't know

7   if they will or they won't, but I'm going to permit them to

8   be added to the list.  Just make sure, Mr. Roche, that we

9   get them because I won't be in the courtroom and so I need

10  to get them today.

11          MR. ROCHE:  Understood, Your Honor.  We will send

12  those over as soon as possible.  I guess to the -- I believe

13  these are all the impeachment exhibits we planned to use.

14  To the extent we have any other impeachment exhibits, given

15  that Your Honor won't be in the court, how would you like us

16  to handle that in the hearing?

17          THE COURT:  You ought to email copies of the

18  impeachment exhibits to my law clerk Mr. Slemmer who can

19  send them to me.

20          MR. ROCHE:  Understood.

21          THE COURT:  And you should have copies, obviously,

22  in the courtroom available for Mr. Hurley and his colleagues

23  as well.  But I -- you know, I need -- so I need electronic

24  copies of them, in other words, so you need to -- if they're

25  pdfs or -- get them to Mr. Slemmer.  He'll get them to me.

Page 27

1            MR. ROCHE:  Understood.  So we would submit those

2       to Your Honor ex parte?

3            THE COURT:  Yes, you will.  Yes.

4            MR. ROCHE:  Understood.

5            THE COURT:  Okay.  And, you know, we'll see

6       whether they come in and if they do, they do.  So they ought

7       to be pre-marked and you'll provide them to Mr. Slemmer who

8       can provide them to me.  And it's ex parte because they're,

9       you know -- we'll see whether they -- for what purpose they

10      come in.  Not all impeachment exhibits come in where the

11      truth of the matter's asserted, but we'll have to deal with

12      that tomorrow during the hearing.

13           MR. ROCHE:  Understood.  One final point, Your

14      Honor, that's I guess related to the reasons Your Honor

15      called this hearing.  One of our team members was in close

16      proximity to somebody who has been diagnosed with COVID.

17      We're following the procedures and the guidelines that the

18      court has set.  That member will be wearing an N95 mask

19      tomorrow, will take a test today to ensure that they're

20      negative ahead of tomorrow's hearing and -- I wanted to --

21      while we're discussing it, if Your Honor has any other

22      guidelines given the situation, we're happy to follow them.

23           THE COURT:  So having looked at the protocol again

24      yesterday, you know, it draws a distinction between someone

25      who's been in close contact but doesn't reside with the

Page 28

1    person who is -- I have the situation. I obviously reside

2    with my wife and the protocol in that instance says, don't

3    enter the courthouse.  Mr. Hurley, I don't know whether you

4    want to respond to this.  I mean, I -- consistent with the

5    protocol, if someone has had limited contact with someone

6    but is still testing negative, I think they're permitted in

7    the courthouse -- in the courtroom.

8              MR. HURLEY:  Perhaps Kyle and I can discuss it

9    when we talk after this and I'll get some more details, but

10   I'm sure we can work something out.

11             THE COURT:  That's fine.  Okay.  All right.  Sorry

12   for this snafu but we will go forward.  Okay?

13             MR. HURLEY:  Thank you, Your Honor.

14             THE COURT:  Thanks very much.

15             MR. ROCHE:  Thank you, Your Honor.

16             THE COURT:  All right.  We're adjourned.

17             CLERK:  All right.  Please stop --

18             (Whereupon these proceedings were concluded.)

19

20

21

22

23

24

25

1                    C E R T I F I C A T I O N

2

3       I, Sonya Ledanski Hyde, certified that the foregoing

4   transcript is a true and accurate record of the proceedings.

5

6   *[signature: Sonya M. Ledanski Hyde]*

7

8   Sonya Ledanski Hyde

9

10

11

12

13

14

15

16

17

18

19

20   Veritext Legal Solutions

21   330 Old Country Road

22   Suite 300

23   Mineola, NY 11501

24

25   Date:  January 12, 2023